**PENSION BENEFIT GUARANTY CORPORATION, Plaintiff,**

v.

**Jerry SOLMSEN, Defendant.**

**No. 85 C 2083.**

United States District Court, E.D. New York.

Sept. 16, 1987.

---

Lawrence F. Landgraff, Washington, D.C. (Edward MacKiewicz, Gen. Counsel, John H. Falsey, Asst. Gen. Counsel, Lois Bruckner Parks, Trial Atty., and Andrew Stewart, Atty., of counsel), Patricia A. Rodenhausen, Acting Regional Sol. of Labor, New York City, for plaintiff.

Melvyn Jay Huber, New York City, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff, Pension Benefit Guaranty Corporation, a wholly-owned United States government corporation established pursuant to 29 U.S.C. § 1302, brings this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff, the successor trustee of the A & S Steel Rule Die Corporation Pension Trust ("the Plan"), alleges that defendant, the former president and sole shareholder of A & S Steel Rule Die Corporation ("A & S"), a now defunct corporation, is personally liable under 29 U.S.C. § 1109(a) for breaches of his fiduciary duties with respect to the Plan because of his alleged failure to forward employee and employer contributions to the Plan. The court has jurisdiction under 29 U.S.C. § 1132(c)(1).

The amended complaint contains two counts. The first alleges, in substance, that defendant withheld from employee paychecks the employee contributions due the Plan but did not submit them to the Plan, and that, as a fiduciary with respect to the Plan, he breached his duty under § 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1), and is personally liable for those contributions under section 409(a) of ERISA, 29 U.S.C. § 1109(a).

The second count alleges, in substance, that A & S was obligated under 26 U.S.C. § 412 of the Internal Revenue Code (IRC) and section 302 of ERISA, 29 U.S.C. § 1082, to make employer contributions so as to satisfy the minimum funding requirements of the Plan but failed to do so, and that defendant, as a fiduciary under ERISA, 29 U.S.C. § 1002(21), is personally liable for the contributions which A & S should have made.

Plaintiff moves for summary judgment on both counts. Defendant cross-moves to dismiss the complaint or for summary judgment on both counts. Plaintiff also moves to strike the affidavit of defendant's attorney in support of defendant's cross-motion on the ground that it does not meet the requirements of Federal Rule of Civil Procedure 56(e).

### I. FACTS

The critical facts, as culled from the voluminous materials submitted by the parties, are in substance as follows. Defendant's father and one Kurt Auerhann formed A & S as a partnership to manufacture and sell tools. After A & S incorporated, each former partner received 50% of the stock and defendant's father became president. Upon his father's death, defendant succeeded to the presidency and to his father's stock interest. When Auerhann died in 1979 defendant purchased the remainder of the shares from the estate.

A & S employees apparently were first covered by a pension plan in 1964. In 1976, A & S terminated a contract with New England Mutual Life Insurance Company ("New England Life"), which until then held the Plan assets, and entered into a new contract with State Mutual Life Assurance Company of America ("State Mutual"), establishing the pension plan at issue.

The Plan, attached to and made a part of the contract between A & S and State Mutual, is entitled the "A & S Steel Rule Die Corporation Pension Trust." Under sections 14.01, 14.04 and 14.05 of the Plan, A & S is the employer, and, in the absence of any appointment by the board of directors of another person, is also the Plan Administrator and the Plan fiduciary responsible for administering the Plan, retaining and maintaining its records, communicating with its participants, filing reports with regulatory agencies, interpreting the Plan, determining questions of eligibility, and exercising overall control of the operation and administration of the Plan.

The contract with State Mutual was issued to the "Trustees of A & S Steel Rule Die Corporation Pension Trust" as the Policyholder. In essence it provided that State Mutual was responsible for investing and handling the Plan assets paid to it by the Trustees of the Plan as the Policyholder. However, State Mutual could not purchase a retirement annuity for a participant unless it received information, which the Policyholder was to provide, necessary to determine the annuity amount and unless the Plan was adequately funded. Contract sections 6.02, 7.07–10, and 7.16. The Policyholder was to pay necessary funds to State Mutual, *id.*, sections 2.01–2.11, and had authority to withdraw funds, *id.*, section 5.07, and demand fund transfers between accounts, *id.*, section 5.02. State Mutual explicitly disclaimed responsibility as a trustee for the assets it managed, *id.*, section 4.10.

State Mutual's records show that defendant, named as "Trustee," verbally telephoned approval of the policy draft. On October 28, 1976 he signed an application for the contract. On August 6, 1979 he signed, as "President," a "Notice to Contract Holder" from State Mutual, stating that the contract had been approved by the state Insurance Department and that his signature would record "receipt of this contract and acceptance of its provisions." On December 15, 1976 he signed, as "Administrator" and "President & Trustee," an agreement with State Mutual entitled "Actuarial and Administrative Services Agreement" which provided that State Mutual was to provide actuarial and administrative services for the Plan and that its duties were limited to providing such services. On December 10, 1976 he signed, as "President and Trustee," an "Optional Service Agreement for Group Defined Benefit Retirement Plans" providing that State Mutual was to prepare text informing the participants about the Plan specifications, subject to "client review, approval, reproduction and use," and was also to furnish information to assist A & S and the Trustees in completing Internal Revenue Service filings and a government disclosure form.

Defendant now says that the insurance agent who sold the plan to A & S on behalf of State Mutual "represented that the insurer would perform all functions." In his deposition in this action, however, defendant stated that he had authority to handle "major matters" affecting the Plan. Plaintiff's Exhibit ("Ex.") 1 at 226–27. In an earlier deposition in a different case defendant testified that he was the plan administrator. Plaintiff's Ex. 2 at 14–15, 49–50, 96–97, 113. Evelyn Cazes, who was bookkeeper for the company and, according to defendant, handled correspondence with State Mutual and requested payments for the Plan, *id.* at 97, 28–29, testified in a deposition that defendant was the plan administrator. Plaintiff's Ex. 31 at 90. Defendant signed documents processing A & S employee retirements under the Plan as "plan administrator." Plaintiff's Exs. 24–29; 31 at 90. State Mutual evidently viewed defendant as the plan administrator. Plaintiff's Ex. 12; 42; Defendant's Ex. B at 72–78, 161–64.

In addition to signing as Trustee and on behalf of the Trustees the documents es-

tablishing the agreements with State Mutual, defendant signed as Trustee a letter authorizing State Mutual to release contributions, plus interest, made by an employee to the Plan. Plaintiff's Ex. 71. Two letters found in A & S' files after its dissolution contain signature blocks designating defendant as Trustee. Plaintiff's Exs. 30; 35. Cazes testified in her deposition that she "knew that [she] needed [defendant's] signature as the trustee" to obtain her retirement benefits. Plaintiff's Ex. 31 at 15.

State Mutual addressed correspondence to defendant as "Trustee." Plaintiff's Exs. 11; 36; 37. New England Life addressed a letter regarding the transfer of assets it was holding under its previous policy to defendant as "Trustee," Plaintiff's Ex. 38, and also sent a request for a letter "from the present plan trustee" evidencing the decision to elect a lump sum transfer. That request noted that "[o]ur records show [defendant] as the Trustee and the necessary letter should come from him." Plaintiff's Ex. 39. A & S' attorneys stated in a letter to plaintiff regarding the Plan that A & S had ceased to operate and that "[t]he Trustee of the Plan is [defendant]." Plaintiff's Ex. 40.

Defendant asserts that he "had no idea, nor did anyone else at A & S, as to what such terms as 'Plan Sponsor,' 'Plan Administrator,' 'Plan Trustee' or other similar terms meant in a technical sense." Defendant's Affidavit ("Aff.") at ¶ 10.

Defendant's affidavit also states that State Mutual drafted all documents, designed the plan, performed actuarial functions, prepared employee information, prepared documents to meet ERISA reporting requirements, invested funds, calculated contributions due, supplied all forms, and sent statements to A & S. He says that whenever a question came up about how to complete a form or what procedure was appropriate, A & S contacted State Mutual. He says his function, along with that of other A & S personnel, was to maintain participant records, send information to State Mutual by filling out its forms, request information, check Plan records, sign checks, and mail in Plan contributions. *Id.*

Defendant was directly involved in terminating the contract with New England Life and obtaining the transfer of assets from New England Life to the State Mutual Plan. Plaintiff's Exs. 15–22; 1 at 124–29. New England Life ultimately sent the lump sum value of the payments under the previous New England Life policy directly to defendant, Plaintiff's Ex. 38, evidently after receiving authorization from defendant as Trustee of the State Mutual Plan, Plaintiff's Ex. 39. Defendant was one of only a few people at A & S with authority to make payments to the Plan. Plaintiff's Exs. 1 at 64–65, 233–34, 251; 2 at 28–29. The others were his subordinates. Plaintiff's Ex. 1 at 56–57, 89–91, 213–14. Only defendant or A & S' vice-president could write sizable checks. *Id.* at 64–65.

Defendant testified at his depositions that one of his responsibilities as plan administrator was to retain and maintain Plan records, Plaintiff's Ex. 2 at 15, and that he had the right to determine if a participant was paid the right amount and to check the records if a question arose, Plaintiff's Ex. 1 at 62, 89. He authorized individual employee retirements, Plaintiff's Exs. 25; 26; 1 at 219, 264, and notified State Mutual of employee retirements, Plaintiff's Exs. 24; 28; 29.

Defendant authorized release of employee contributions to retiring employees, Plaintiff's Exs. 71; 2 at 54–55, and was directly involved in determining Cazes' eligibility to receive credit for past years of service, Plaintiff's Ex. 2 at 61. According to Cazes' deposition testimony, defendant signed all retirement forms requiring the plan administrator's signature. Plaintiff's Ex. 31 at 90. State Mutual sought advice from defendant about Cazes' benefit determination. Plaintiff's Ex. 64. State Mutual personnel contacted defendant when "important matters requiring a decision," such as authorization to release employee Plan contributions, arose. Woslegal Aff. at ¶ 3.

The plan was underfinanced from its inception. Defendant was well aware of this deficiency and the fact that minimum con-

tributions were not made. Plaintiff's Exs. 1 at 234; 2 at 17–18; Defendant's Aff. at ¶ 2. He testified at his deposition that he did not know how much was owed but that he did not ask State Mutual to compute the amount because that was not his "principal concern." Plaintiff's Ex. 1 at 243–44. In fact, plaintiff's uncontradicted computations show that when the Plan was terminated, it was owed $185,640 in contributions, including $19,758.54 in employee contributions deducted from paychecks but not forwarded to the Plan and $165,881.16 in employer contributions.

State Mutual notified A & S that it was not meeting its yearly duties to fund the Plan. Plaintiff's Exs. 34; 62. According to defendant's deposition testimony, Cazes consulted him "numerous times" to ask him to make payments, but he did not seek to find out the amount due because "[n]obody was pressing for it." Plaintiff's Exs. 1 at 245; 2 at 28. Contributions were made "whenever the money was available" and if the bank balance was "sufficient." Plaintiff's Ex. 1 at 235, 251. Defendant viewed meeting the payroll as "the top priority," and payments to the Plan were a priority "no lower than anything else" with items other than payroll paid "on priority of who stood at the door knocking." Compared with payroll payments, "[e]verything else took second seat." Id. at 253, 284.

Deductions for pension contributions made from employee salaries went without segregation into the general company account, from which payments were made to State Mutual to fund the Plan. Ex. 1 at 273, 251. The employee deductions were not, however, forwarded in full to the Plan. Id. at 273, 283. Defendant states that when State Mutual sent "disclosure information about the Plan status and each participant's benefits," the information was distributed "in accordance with State Mutual's instructions." Defendant's Aff. at ¶ 10. However, defendant did not inform the employees that although they received paycheck stubs showing pension deductions, at least a portion of those deductions was not represented by money in the bank or forwarded on their behalf to the Plan. Plaintiff's Ex. 1 at 285–86. According to his deposition testimony, the defendant viewed deductions from employee paychecks not as "money," but rather as "figures" or "numbers"; the general company account monies were allocated first to net payroll and then among creditors pressing for payment. Id. at 281–85.

A & S' financial condition deteriorated in late 1979 or early 1980, id. at 292, and the company obtained financing from Trefoil Capital Corporation ("Trefoil"), a factor A & S used to obtain loans against its accounts receivable from 1977 or 1978, id. at 276. A & S paid a minor part of its loan balance owed to the factor and used the remainder to pay expenses such as pension contributions. Defendant's Aff. at ¶ 9.

Some time in 1980 Trefoil assumed financial control of A & S and began running the business. Plaintiff's Ex. 1 at 276, 280. A & S provided Trefoil with information about its operating expenses, and Trefoil allocated money to pay bills and provided accounting indicating the allocation. Id. at 278, 280. Although pension contributions were shown as deductions from employee paychecks, Trefoil, with defendant's knowledge, failed to make these contributions to the Plan. Id. at 278–79. Defendant did not so inform the A & S employees. Id. at 285. His affidavit states that "the choice came down to obeying Trefoil's instructions regarding which A & S expenses were to be paid ... including pension contributions, or going out of business," and that "A & S chose to remain in business." Defendant's Aff. at ¶ 9.

A & S went out of business in May 1981. Plaintiff's auditor was assigned in June 1981. Defendant submitted notice by letter on October 5, 1981 of termination of the Plan. Plaintiff's Ex. 32. In late 1981 plaintiff's auditor began her audit. She traveled in March 1982 to New York to examine and take defendant's copies of papers relating to the Plan. Defendant's Aff. at ¶ 3. By agreement dated June 7, 1982 and signed by defendant on behalf of A & S on March 18, 1982, plaintiff was appointed trustee of the Plan. Plaintiff's Ex. 33. The agreement stated that plaintiff was unable to determine whether the assets

under the Plan were sufficient to discharge all the Plan obligations. *Id.*

Cazes was deposed on December 20, 1982 with regard to a lawsuit she brought. Plaintiff's Ex. 31. Defendant was deposed in that action on March 24, 1983. Plaintiff's Ex. 2. A State Mutual employee was deposed in that action on December 22 and 28, 1982. Defendant's Ex. B. According to an affidavit filed by plaintiff's auditor, she was unable to determine the extent of A & S contributions to the Plan during the period of the contract with State Mutual until she acquired a complete set of Statements of Deposit produced as an exhibit in the State Mutual employee's December 1982 deposition.

## II.

### A. *Statute of Limitations*

■ Defendant's cross-motion asserts that this action, filed June 7, 1985, is barred by the three-year statute of limitations set forth at 29 U.S.C. § 1113. The statute provides in relevant part that "[n]o action may be commenced ... with respect to a fiduciary's breach ... after ... (2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation." Defendant argues that plaintiff had enough knowledge to bring this action in March 1982 when its auditor obtained the documents in defendant's possession relating to the Plan.

Defendant did not raise this defense in his answer despite the requirements of Federal Rule of Civil Procedure 12(b) and although he knew of the time when the auditor obtained the papers. In any event, the statute requires "actual knowledge." Plaintiff's auditor avers without contradiction that she could not determine A & S' actual contributions to the Plan until sometime after December 1982 when she obtained a complete set of Statements of Deposit. Even if the documents she received from defendant in March 1982 were sufficient to show his fiduciary status and the underfunding of the Plan, plaintiff's auditor could not know if the underfunding was due to defendant's failure to forward contributions without a complete record of the actual deposits made.

### B. *Service of Process*

Defendant's cross-motion asserts that plaintiff did not exercise due diligence in obtaining service of the complaint. Federal Rule of Civil Procedure 3 provides that a civil action is commenced by the filing of a complaint. As noted, the complaint was filed on June 7, 1985. By motion filed October 7, 1985, plaintiff asked the court to grant a 60–day extension of time to serve defendant. Plaintiff explained that it was having difficulty locating defendant because he had moved and left no forwarding address. The court signed an order dated October 8, 1985 extending plaintiff's time to serve to and including December 6, 1985. The complaint was duly served on December 5, 1985, not on December 10, 1985 as defendant represents.

### C. *Defendant's Fiduciary Status and Breach of Fiduciary Duties*

A central issue posed by the motion and cross-motion is whether defendant was a Plan fiduciary and breached his fiduciary duties.

ERISA provides in relevant part that a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

Defendant contends he was not a fiduciary because he was not named in the Plan as a trustee or plan administrator. *Cf.* 29 U.S.C. §§ 1102(a), 1103(a). The Plan provided for appointment of its fiduciaries by A & S' Board of Directors. Plan sections 14.01 and 14.04. But defendant testified in his deposition in this case that he did not recall a board of directors, could not name any members of a board, and did not believe A & S had a board of directors. Plaintiff's Ex. 1 at 23–24, 25. The evidence

shows that defendant signed as "Trustee" the documents implementing the agreement with State Mutual and signed at least one letter as "Trustee" authorizing State Mutual to release contributions. The court does not accept defendant's speculation that other persons may have added these titles to documents bearing defendant's signature after he signed. Not only State Mutual, but also New England Life and A & S' own attorneys and bookkeeper, Cazes, all viewed defendant as the Trustee of the Plan.

Moreover, defendant signed several documents, including the "Actuarial and Administrative Services Agreement" with State Mutual, as plan administrator. He named himself as the "plan administrator" in a deposition, and Cazes so identified him in her deposition. State Mutual repeatedly referred correspondence and forms to defendant as "plan administrator."

The evidence therefore demonstrates that defendant identified himself as the Trustee and plan administrator of the Plan. Congress' intent in enacting ERISA would hardly be furthered if defendant could escape the fiduciary status he assumed by relying on the failure of an apparently non-existent corporate board of directors formally to give him a fiduciary title. The Fifth Circuit Court of Appeals has observed in a similar case that "while the designation of a person as a trustee or plan administrator is not dispositive, it is certainly not irrelevant." *Donovan v. Mercer,* 747 F.2d 304, 309 (5th Cir.1984). The court in that case held the defendant, although not formally appointed a trustee, to be a fiduciary where she was "represented" in various documents as a trustee and took actions in an official capacity as trustee. *See id.*

Defendant asserts that he did not understand "in a technical sense" the meaning of the terms "trustee" or "plan administrator." The Fifth Circuit rejected just such an argument in *Donovan, supra,* at 308 n. 4, noting the "long standing and generally accepted principle of contract law that ... a person who intentionally signs a document is bound by its contents." *See also*

*Miller v. Lay Trucking Company,* 606 F.Supp. 1326, 1334–35 (N.D.Ind.1985) (holding that one who is named in documents as plan administrator, signs documents as plan administrator, and assumes discretionary authority in the administration of the pension plan is a fiduciary).

█ This court holds that a person who is repeatedly named by others in a fiduciary capacity and so identifies himself in numerous documents is a fiduciary, even though he did not bother to learn the meaning of the titles he assumed or read the pertinent provisions of the Plan.

Defendant argues that he was not a fiduciary because he did not exercise discretion or control and that his actions were "ministerial." He relies on an Internal Revenue Service regulation stating that a person is not a fiduciary who has "no power to make any decisions as to plan policy, interpretations, practices or procedures" but performs "administrative functions" such as application of benefit eligibility rules, calculation of benefits, claim processing, report preparation and record maintenance "within a framework of policies, interpretations, rules, practices and procedures made by other persons." 29 C.F.R. § 2509.75–8 at D–2 Q (1986).

The record demonstrates that defendant had much wider responsibilities than those mentioned in the above-quoted regulation. He was directly involved in terminating the contract with New England Life, obtaining the transfer of assets from New England Life to the State Mutual plan, and signing documents to implement the agreement with State Mutual. He authorized employee retirements and release of employee contributions and participated in determining Cazes' eligibility to receive credit for past years of service. According to at least one State Mutual official, he was the person contacted when "important matters involving a decision" arose such as authorization to release employee Plan contributions. He signed papers terminating the Plan and appointing plaintiff as trustee. Most significantly, defendant was responsible for authorizing and making payments to the Plan. According to his own testimo-

ny, he exercised discretion in declining to authorize and make payments when the bank balance was not "sufficient." These acts show defendant's discretionary authority as to the management and administration of the Plan and the disposition of its assets. *See Blatt v. Marshall and Lassman,* 812 F.2d 810 (2d Cir.1987); *Donovan, supra,* at 308–09.

Defendant's contention that all administrator or fiduciary duties were those of State Mutual is inconsistent with the Plan and the contract with State Mutual of which it was a part. Both these documents place responsibility for making plan contributions and performing administrative duties on A & S' named fiduciary, not on State Mutual. *See* 29 U.S.C. § 1102(a). Even if State Mutual had fiduciary responsibility for investing assets and for some plan administration, defendant had the fiduciary responsibility under the Plan to make contributions due to it.

Defendant's brief says that he did not breach his fiduciary responsibilities because he did not know, nor could have known, that contributions had not been sent to State Mutual. This is refuted by defendant's affidavit and his testimony at his deposition stating that he was well aware that the plan was underfunded and that some employee contributions were not forwarded. Moreover, State Mutual on at least two occasions sent notifications that the plan was underfunded and that further contributions were due.

Defendant argues that, lacking adequate funds, he could not have done more than he did to cause A & S to make the contributions due to the Plan. Defendant has not established financial hardship prior to the time Trefoil assumed control of allocating A & S expense payments. Moreover, 29 U.S.C. § 1082 and 26 U.S.C. § 412, which establish minimum funding standards for pension plans, make no exceptions based on the financial condition of the Plan sponsor. Under 26 U.S.C. § 412(d), an employer experiencing "substantial business hardship" may apply for a funding waiver, but defendant did not do so nor cause A & S to do so. Nor did he attempt to terminate the Plan. According to his own testimony, he allocated available monies to pay other company expenses rather than the Plan contributions deducted from employee paychecks.

Defendant makes contentions that misapprehend the nature of this action. He says that he had no duty to assume the corporate responsibility to collect and forward contributions and that just because he is the president and controlling stockholder he should not be held personally liable. But he is not sued as an individual or even as an officer or shareholder. Plaintiff is not seeking to pierce the corporate veil. Defendant is sued because of what he did and failed to do as a fiduciary. Congress' primary purpose in enacting ERISA was to protect the pensions of participating employees. Defendant assumed the fiduciary duty to see to the making of contributions to the Plan. He knowingly and deliberately failed to perform that duty and used for his corporation's purposes funds required to be allocated to pensioners. He must answer in damages for the consequences. Under 29 U.S.C. § 1104(a)(1),

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and ... (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use ... [and] (D) in accordance with the documents and instruments governing the plan.

Pursuant to 29 U.S.C. § 1103(c)(1), "the assets of a plan shall never inure to the benefit of any employer." Under 29 U.S.C. § 1106(b)(1), "[a] fiduciary with respect to a plan shall not—(1) deal with the assets of the plan in his own interest or for his own account." Defendant violated these provisions.

He neither forwarded nor made an effort to cause A & S to forward deducted employee contributions to the Plan, thereby

violating the documents governing the Plan and 29 U.S.C. § 1104(a)(1)(D). He also violated the law of fiduciary responsibility in failing to notify the employees that their deducted paycheck contributions had not been forwarded. *See Rosen v. Hotel and Restaurant Employees & Bartenders Union*, 637 F.2d 592, 600 (3d Cir.) (holding that a trustee who fails to notify pensioners of an employer's failure to make required contributions or to take action against such an employer violates fiduciary duties), *cert. denied*, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981). *Cf. Laborers Health and Welfare Trust Fund v. Kaufman & Broad of Northern California, Inc.*, 707 F.2d 412 (9th Cir.1983) (finding that failure to collect pension contributions may breach plan trustees' statutory duty of care and diligence).

Defendant allocated available monies to corporate expenses rather than the pension fund, thereby breaching his duty to act solely in the interests of the Plan's participants under § 1104(a)(1). Indeed, in assuming conflicting roles as a fiduciary and as an officer of a struggling corporation, defendant prevented himself from fulfilling his duty to act with complete loyalty to Plan participants. *Cf. Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir.), *cert. denied*, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982).

Defendant thus permitted A & S and Trefoil to use the contributions to operate A & S' business in violation of 29 U.S.C. §§ 1104(a)(1) and 1103(c)(1). Because he was also sole shareholder of the corporation, defendant dealt with the plan assets in his own account in violation of 29 U.S.C. § 1106(b)(1). Defendant suggests that he did not use Plan assets because "[n]othing is a Plan asset until it is contributed." He cites no legal authority in support of this proposition. *Cf. Pension Benefit Guaranty Corporation v. Greene*, 570 F.Supp. 1483, 1495–96, 1499–500 (W.D.Pa.1983) (defendants who were trustees and corporate officers and failed to enforce company obligations to make contributions engaged in "forbidden self-dealing"), *aff'd*, 727 F.2d 1100 (3d Cir.), *cert. denied*, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). There is no basis for concluding that a fiduciary can escape liability for misusing plan assets by diverting or permitting diversion of employee contributions before they reach the investment account.

## D. *Liability of Defendant*

Defendant asserts that no participant is alleged to have sustained financial loss or damage under the Plan, and that therefore plaintiff cannot sustain its action "on a subrogation theory." However, plaintiff, as trustee of the Plan, brings this action under 29 U.S.C. § 1342(d)(1)(B)(ii) to collect amounts due to the Plan, not to individual participants.

Defendant argues that ERISA limits employer liability to the plaintiff, citing 29 U.S.C. §§ 1362(a) and (b) and 1368. Plaintiff, however, brings this action against defendant as a fiduciary, not as an employer, and does so on behalf of the Plan in its capacity as trustee, not in its role as a pension plan guarantor. Pursuant to 29 U.S.C. § 1109(a), "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach."

Defendant attacks plaintiff's calculations of the amounts due to the Plan as a result of defendant's failure to forward contributions. Most of this attack is contained in the section of defendant's brief contesting the accuracy of plaintiff's statement of material facts under Rule 3(g) of the Local Rules for the District Courts for the Eastern and Southern Districts of New York. This section of defendant's opposition brief to plaintiff's summary judgment motion is not the "separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue" required by Rule 3(g).

In any event, plaintiff has fully explained its calculations of the amount due to the pension plan. Although defendant denies the accuracy of these calculations, apparently his sole ground for dispute is the fact

that plaintiff's auditor made the calculations. Absent some affirmative showing that the calculations are inaccurate or that damages due to the plan are otherwise in dispute, the court accepts plaintiff's proof on this issue.

### E. *Plaintiff's Motion to Strike Defendant's Counsel's Affidavit*

Plaintiff asserts that defendant's counsel's affidavit in opposition to plaintiff's summary judgment motion violates Rule 56(e) of the Federal Rules of Civil Procedure because it does not reflect the affiant's personal knowledge. The affidavit states that defendant's counsel has examined the papers submitted in this action and concluded that there are "triable issues of material fact in dispute." The court treats this affidavit as argument, and is unpersuaded by it.

## III. CONCLUSION

Defendant's cross-motions to dismiss and for summary judgment are denied. Plaintiff's motion for summary judgment is granted.

So ordered.