**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Douglas Richard GRIZZLE; Grizzle
Insulation Company, Inc.,
Defendants–Appellants.**

No. 90–8454.

United States Court of Appeals,
Eleventh Circuit.

June 17, 1991.

Rehearing Denied July 31, 1991.

---

Michael H. Saul, Marietta, Ga. (Court-appointed), for defendants-appellants.

Candiss L. Howard, Asst. U.S. Atty., Atlanta, Ga., Rebecca Kettelle Pyne, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, DUBINA, Circuit Judge and HENDERSON, Senior Circuit Judge.

DUBINA, Circuit Judge:

Appellants, Douglas Richard Grizzle ("Grizzle") and Grizzle Insulation Company

(the "Company"), were convicted of violating 18 U.S.C. § 662 (receiving stolen property) and § 664 (embezzlement from employee benefit plan).[1] Grizzle was also convicted of violating 18 U.S.C. §§ 1001 and 1002 (making false statements to any department or agency of the United States). For the reasons which follow, we affirm the appellants' convictions.

## I. FACTS

Grizzle was the president of the Company, which employed members of International Association of Heat and Frost Insulation and Asbestos Workers Local # 48 ("Local 48") to perform insulation work. The Company was a member of the Insulation Contractors Association ("ICA") of Atlanta, Georgia, an employers' association, which negotiated collective bargaining agreements with Local 48 regarding the terms and conditions governing wages, working conditions and fringe benefits, including vacation benefits, of its members. Under the terms of the collective bargaining agreements, Grizzle agreed to withhold from each employee's wages $1.00 per hour worked and to contribute these funds to the Local 48 Vacation Fund (the "Vacation Fund") as directed by the Vacation Fund trustees.

The Vacation Fund was established by Local 48 and the ICA of Atlanta on December 1, 1981, pursuant to a declaration and agreement of trust. The Vacation Fund was to be funded solely by employee contributions of after tax income and was essentially a savings plan whereby the money would be invested in interest-bearing accounts with disbursements to employee participants paid out twice a year. The parties stipulated that the Vacation Fund was an employee benefit plan subject to Title I of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA").

Three representatives of the ICA and three representatives of Local 48 were designated as trustees of the Vacation Fund and were responsible for directing the administration of the Vacation Fund through Light and Associates ("L & A"). As administrator, L & A monitored the incoming contributions, which employers forwarded directly to the Vacation Fund's interest-bearing checking account, calculated the benefits due each employee and made payments to employees twice a year of the vacation monies accrued on their behalf. Each month the Company received from L & A blank remittance forms which were to be returned with the calculations of the month's Vacation Fund contributions deducted from employees' wages and paid to the Vacation Fund. L & A directed Grizzle to remit contributions directly to the Vacation Fund's bank account.

From December 1985 through May 1987, Grizzle and his son did not make timely returns of the monthly remittance forms to L & A or timely payments of employee contributions to the Vacation Fund's bank account. During this period, delinquency notices for the nonpayment of employee contributions were sent each month to Grizzle. An audit of the Vacation Fund revealed that from October 1986 to May 1987, Grizzle withheld $11,808.50 from employees' paychecks as Vacation Fund contributions, which were not forwarded to the Vacation Fund's bank account although they were due and payable to the Vacation Fund on a monthly basis.

In May 1987, Local 48 stopped supplying union members to work for the Company. Later that month, Grizzle and his son formed a new company, G & G, which performed work as a subcontractor at a number of federal construction/renovation sites. G & G eventually went out of business.

The United States Department of Labor requires that certified payrolls be submitted for all work done on federal job sites to ensure that a certain wage scale is being met. Employers are required to list employee names, social security numbers and pay rates as well as taxes, gross wages, fringe benefits, union dues and va-

---

**1.** Gregory Grizzle, the son of Douglas Grizzle and an employee of the Company, was acquitted of charges similar to those on which his father was convicted.

cation pay withheld from pay checks. Grizzle admitted authorizing his son to complete and sign the certified payrolls or forms which are the subject of the indictment. Grizzle's son admitted that he certified on each payroll that union dues and vacation funds had been or would be paid to the appropriate programs. At the time of trial, both Grizzle and his son admitted that the funds were collected and were due and payable to the Vacation Fund.

## II. PROCEDURAL BACKGROUND

Grizzle, his son, and the Company were indicted by a federal grand jury on charges that they embezzled ERISA funds and on charges of making false statements on forms required by the United States Department of Labor. After an eight-day jury trial, Douglas Grizzle was convicted on all counts, the Company was convicted of embezzling ERISA funds and Gregory Grizzle was acquitted on all counts.

Grizzle and the Company filed their notice of appeal in which they raise the following issues for appellate review: (1) whether employee contributions to the Vacation Fund, which were withheld from employees' paychecks but not delivered to the fund, were fund moneys or assets as specified in 18 U.S.C. § 664; (2) whether a conviction under 18 U.S.C. § 664 requires proof of a fiduciary relationship; (3) whether the district court erred in finding that false statements on certified payrolls that vacation funds had been or would be paid were material; (4) whether the district court's finding as to materiality deprived the defendants of the right to trial by jury; and (5) whether the district court abused its discretion in excluding expert testimony as to Grizzle's mental condition.

## III. DISCUSSION

### A. *Fund moneys or assets*

■■■■ Grizzle and the Company were convicted of embezzling and converting moneys and funds of an employee welfare benefit plan under 18 U.S.C. § 664, which provides:

> Any person who embezzles, steals or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan [subject to Title I of the Employee Retirement Income Security Act of 1974] or of any fund connected therewith, shall be fined not more than $10,000, or imprisoned for not more than five years, or both.[2]

Grizzle and the Company contend that the evidence at trial showed that the money they are accused of embezzling never became a part of the Vacation Fund. They argue that fund money is money received by the administrators on behalf of the trustees, and since Grizzle never delivered the money to the administrators, the money could not have been taken from the "fund." Whether moneys withheld from employee paychecks were Vacation Fund moneys is a legal question and it is subject to de novo review by this court. *Kirkland v. National Mortgage Network, Inc.*, 884 F.2d 1367, 1370 (11th Cir.1989).

The government maintains that assets of employee benefit plans subject to ERISA include employee contributions to benefit plans which are withheld from employees' paychecks by employers though not yet delivered to the benefit plan. *See Pension Benefit Guaranty Corporation v. Solmsen*, 671 F.Supp. 938 (E.D.N.Y.1987). In *Solmsen*, an employer who had assumed the duty to forward employee contributions to the benefit plan but allocated the monies to corporate expenses rather than to the employee benefit plan, was held liable for the misuse of plan assets. The *Solmsen* court squarely rejected the defendant's argument that the employee contributions

**2.** Specifically, Grizzle and the Company were charged and convicted, under Count I of the indictment, of the "embezzlement and unlawful and willful conversion to their own use the sum of $11,808.50, moneys and funds of the Vaca-
tion Trust Fund of the Asbestos Workers Local Number 48, Fringe Benefit Fund, an employee welfare benefit fund as defined in Title I of the Employee Retirement Income Security Act of 1974 (ERISA)."

were not "plan assets" until they were contributed to the plan. *Id.* at 946.

Subsequent to *Solmsen,* the Department of Labor issued a regulation which clarified that "plan assets" for purposes of Title I of ERISA include employee contributions. *See* 29 C.F.R. § 2510.3–102 (1989). This regulation states:

> ... [T]he assets of the plan include amounts ... that a participant ... has withheld from his wages by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets, not to exceed 90 days from the date on which such amounts ... would otherwise have been payable to the participant in cash (in the case of amounts withheld by an employer from the participant's wages).[3]

Thus, the assets of employee benefit plans subject to ERISA include employee contributions to benefit plans which are withheld from employees' paychecks and for deposit into their benefit plans, even though the contributions have not actually been delivered to the benefit plan.

In the present case, the special duties imposed by ERISA, federal regulations, the collective bargaining agreements and the Declaration and Agreement of Trust regarding employee contributions to the Vacation Fund indicate that the funds withheld from the employees are plan assets entrusted to Grizzle to be accounted for by him until such time as they are remitted to the Vacation Fund. Grizzle's argument that these employee contributions are not specifically identified as moneys of the Vacation Trust in the Agreement and Declaration of Trust is misleading, as the Declaration of Trust does not purport to set forth an exhaustive definition of assets and moneys of the "Trust Fund." [4] Instead we are persuaded that the employee contributions to the Local 48 Vacation Fund were moneys and funds of an employee benefit plan subject to Title I of ERISA.

## B. *Fiduciary relationship*

■ After the government rested its case, Grizzle filed a motion for judgment of acquittal on the basis that there was no evidence he was a fiduciary of the Vacation Trust. He argues that his motion should have been granted because he was not a fiduciary or a trustee whose job is to receive, hold and administer the funds. Thus, he claims he could not be convicted under § 664 because he was not a fiduciary. Whether a fiduciary relationship is required for conviction under 18 U.S.C. § 664 is a legal issue subject to de novo review by this court. *United States v. Gabay,* 923 F.2d 1536, 1545 (11th Cir.1991).

Criminal culpability under § 664 does not require that a defendant hold any particular status in relation to an employee benefit plan or fund connected with a plan or that he or she act as a fiduciary with respect to an employee welfare benefit plan transaction. *United States v. Goodstein,* 883 F.2d 1362, 1371 (7th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1305, 108 L.Ed.2d 481 (1990) (proof of lawful possession or lawful access to property at the time of appropriation is not required to demonstrate conversion in violation of 18 U.S.C. § 664); *United States v. Wuagneux,* 683 F.2d 1343, 1359 (11th Cir.1982), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983) (affirming conviction pursuant to 18 U.S.C. § 664 predicated on the disbursement of loan proceeds from a plan which resulted from the borrower's fraudulent overvaluation of the collateral pledged for the loan). Congress intended the statute to be read broadly to include any person who misuses or misappropriates contributions intended for deposit in an employee welfare benefit

---

3. Although this regulation was not passed until after Grizzle and the Company had committed the actions for which they were convicted, the regulation was based on and is consistent with the provisions of ERISA which require that plan assets be held in trust and that "plan assets shall never inure to the benefit of an employer." 29 U.S.C. § 1103.

4. Article I, Section 8 of the Declaration and Agreement of Trust states: " 'Trust,' 'Trust Fund,' and 'Fund,' as used herein, shall mean the entire trust estate of the Asbestos Workers # 48 Vacation Fund as it may from time to time be constituted, including but not limited to, all funds received in the form of contributions, together with all contracts...."

plan. We find that the language "any person" in § 664 includes an employer who agrees to withhold wages from employees' paychecks for deposit in a welfare benefit plan.

■ Additionally, the government presented evidence at trial that Grizzle was a de facto fiduciary of the Vacation Fund to the extent that he exercised authority or control over the employee contributions by withholding those contributions from employees' paychecks. A fiduciary is defined by ERISA as follows:

> ... [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting the management or disposition of its assets....

29 U.S.C. § 1002(21)(A). The evidence at trial showed that Grizzle withheld employee contributions to the Vacation Fund pursuant to collective bargaining agreements and the Declaration and Agreement of Trust for the Vacation Fund. Grizzle and his son both admitted that they received approximately $11,808.50 from their employees that was to be delivered to the Vacation Fund. This amount is still due the Fund.

The record demonstrates that Grizzle exercised discretionary authority and control respecting the disposition of the employees' contributions. Accordingly, we agree with the government that Grizzle was a de facto fiduciary; however, a fiduciary relationship is not required for conviction under § 664. The statute clearly states that *"any person who embezzles ..."* any moneys or funds of an employee welfare benefit plan is subject to conviction. (emphasis added).

### C. *Materiality and Right to Jury Trial*

■ Grizzle contends that the government's proof of the materiality of his false statements on certified payrolls that vacation funds had been or would be paid was insufficient. Grizzle also contends that the district court erred in not submitting the question of materiality to the jury. The determination of whether a statement is a material fact for purposes of proving fraudulent activities is a question of law. *United States v. Gafyczk*, 847 F.2d 685, 690 (11th Cir.1988); *United States v. Beer*, 518 F.2d 168, 171 (5th Cir.1975).

■ The test of materiality is whether a statement has a natural tendency to influence, or is capable of influencing, the exercise of a governmental function. *United States v. Lichenstein*, 610 F.2d 1272, 1278 (5th Cir.), *cert. denied*, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980). The government must prove at trial that the statement had the capacity to influence a determination required to be made in the course of the exercise of a governmental function. The evidence before the district court was that the certified payrolls were required by the Labor Department on all federal job sites in order to assure that a certain wage scale was being paid, that Grizzle authorized the signing and submission of said forms, which certified that Vacation Funds had been or would be paid to appropriate programs, and that Vacation Funds were deducted from Grizzle's employees' after tax wages but never paid to the Vacation Trust Fund or to the employees. Grizzle's false statements had the capacity to influence the Department of Labor in that they induced the belief that appropriate wages were being paid, thereby enabling Grizzle to continue work on particular federal projects. Explicit evidence by a government agent as to how the false statement influenced or may have influenced a governmental agency is not required. *United States v. Ramos*, 725 F.2d 1322 (11th Cir.1984). Accordingly, the district court did not err in concluding that Grizzle's false statements to the Department of Labor were material. Furthermore, we find no merit to Grizzle's contention that a question of law should have been submitted to the jury.

### D. *Expert Testimony*

■ Grizzle contends that the psychological testimony regarding his mental state should have been submitted to the jury because he is charged with the commission of a crime which requires specific intent.

Decisions regarding the admission of expert testimony are within the sound discretion of the district court. *United States v. Russell,* 703 F.2d 1243 (11th Cir.1983). "A showing that the district court erred or abused its discretion in excluding evidence does not lead automatically to a reversal." *United States v. Cameron,* 907 F.2d 1051, 1059 (11th Cir.1990). We disagree with Grizzle that the district court's decision to exclude the testimony regarding Grizzle's mental condition constituted an abuse of discretion.

### IV.  CONCLUSION

For the foregoing reasons, we affirm the appellants' convictions.

AFFIRMED.