**PROFESSIONAL HELICOPTER PILOTS ASSOCIATION, et al., Plaintiffs,**

v.

**Dana DENISON, et al., Defendants.**

**Civ. A. No. 86–T–776–S.**

United States District Court, M.D. Alabama, S.D.

Sept. 28, 1992.

George C. Longshore, Birmingham, Ala., for plaintiffs.

Alston A. Wallace, pro se.

Dana Dennison, pro se.

## ORDER

MYRON H. THOMPSON, Chief Judge.

This case arises out of an employee welfare benefit plan established between an employer, DWS, Inc., and an employee bargaining group, Professional Helicopter Pilots Association (hereinafter referred to as "PHPA"). The plaintiffs consist of the following: PHPA, an organization representing flight instructors, whose members were eligible to participate in the plan; Contractor Flight Instructors Society, a nascent organization of flight commanders, whose members were also eligible to participate in the plan; and various trustees and participants in the plan. The plaintiffs charge that defendants Dana Denison and Alston A. Wallace, two corporate officers of DWS, breached their duties as fiduciaries of the plan, in violation of the Employee Retirement Income Security Act of 1974 (commonly known as "ERISA"), 29 U.S.C.A. § 1001–1461. This cause is now before the court on plaintiffs' motion for summary judgment. For reasons set forth below, the court concludes that the motion should be granted in part and denied in part.

## I. BACKGROUND

In 1985, the United States Army awarded a contract to DWS to provide flight training services to students at a military installation. Denison was president of DWS and Wallace served as both executive vice-president and secretary. After being awarded the contract, DWS signed a collective bargaining agreement with PHPA. The agreement required that DWS maintain a pension plan. DWS agreed to withhold from the wages of each employee every two-week pay period an amount designated by the employee as his contribution to the plan. DWS was to deposit the withheld wages into the plan's fund and to invest the money in an investment account designated by the employee. The employees had three investment choices: a guaranteed income fund, an equity fund, or a life insurance program. DWS also agreed that it would deposit into the fund each pay period an amount equal to 1.5% of each employee's bi-weekly "base salary."

To implement the plan, PHPA and DWS executed a trust agreement. Wallace and Denison signed the trust agreement on behalf of DWS as the company's secretary and president, respectively. The plan named DWS as the plan's administrator.

DWS hired a pension management firm to perform the account functions associated with the plan. From payroll information, the firm identified the amount each employee designated to be withheld from his pay for contribution to the plan, and the firm calculated DWS's employer contribution for each employee to the plan. The firm also determined the total amount the plan was required to invest in each of the three investment accounts. The firm then sent instructions each month to DWS, as the plan administrator, indicating the amounts the plan was to allocate to the three investment accounts.

For the months of October 1985 through March 1986, DWS forwarded the required employee and employer contributions to the plan. However, for the months of April through June 1986, DWS made the appropriate payroll deductions but failed to deposit these withheld wages into the fund. DWS also failed to pay into the fund its employer contributions. The total amount DWS owed to the fund for these three months was $321,075.01. DWS eventually

went into bankruptcy, leaving the fund with a deficit because of the unpaid employee and employer contributions.

Plaintiffs initiated this lawsuit in August 1986 shortly after they discovered that Denison and Wallace had failed to deposit employee and employer contributions to the fund as required by the trust agreement. Denison and Wallace responded by filing for personal bankruptcy, and this case was dismissed without prejudice to the right of the plaintiffs to petition for reinstatement should the bankruptcy courts allow this case to proceed again. In February 1992, plaintiffs moved to reinstate Count I of their complaint against Wallace and Denison to pursue their ERISA claim for breach of fiduciary duty. The court granted the petition for reinstatement.

Plaintiffs have now moved for summary judgment, claiming that Denison and Wallace are personally liable for the amounts still owed to the pension plan. Plaintiffs contend that Denison and Wallace breached their duties as fiduciaries of the plan by failing to segregate the trust fund money from DWS's corporate assets and by failing to notify DWS employees that contributions were not being made to the plan and to the investment accounts. Denison and Wallace admit that they failed to make the required contributions to the fund but deny that they breached any fiduciary duties.

## II. SUMMARY JUDGMENT STANDARD

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion and identified those undisputed facts necessary to support its claim, the burden shifts to the nonmoving party to call evidence to the attention of the court sufficient to demonstrate a genuine issue of material fact as to at least one element that the moving party has to prove at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548,

2553, 91 L.Ed.2d 265 (1986); *see also Tidmore Oil Co. Inc. v. BP Oil Co.*, 932 F.2d 1384, 1387–88 (11th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991). If the evidence favoring the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Furthermore, in deciding a motion for summary judgment, the court must consider all evidence in the light most favorable to the nonmoving party and resolve all reasonable doubts in favor of the nonmoving party. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

■ The statutory basis for a suit claiming breach of fiduciary duty under ERISA is 29 U.S.C.A. § 1109. *Simmons v. S. Bell Tel. & Tel. Co.*, 940 F.2d 614, 617 (11th Cir.1991). Section 1109 imposes personal liability on any fiduciary who breaches "any of the responsibilities, obligations, or duties imposed upon fiduciaries" by ERISA. Section 1109(a) further provides that fiduciaries who breach their duty "shall be personally liable to make good to such plan any losses to the plan resulting from such breach, and to restore to such plan any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." Because the primary purpose of ERISA's fiduciary provisions is to protect the integrity of the plan, persons who bring fiduciary claims under section 1109 must do so for the benefit of the plan as a whole. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142–44, 105 S.Ct. 3085, 3090–91, 87 L.Ed.2d 96 (1985). Here, plaintiffs seek remedies that will benefit the plan as a whole. In addition, ERISA provides that a civil action may be brought "by the Secretary, or by a participant, beneficiary or

fiduciary for appropriate relief under section 1109." 29 U.S.C.A. § 1132(a)(2). The plaintiffs here are either participants or fiduciaries.

The critical two questions, therefore, presented to the court are, first, whether Denison and Wallace were fiduciaries of the plan and, second, if they were, whether they breached their fiduciary duties.

### A. Were Denison and Wallace Fiduciaries of the Plan?

■ ERISA provides that a person is a fiduciary with respect to a plan to the extent that "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C.A. § 1002(21)(A). Courts have held that, with this statutory language, Congress intended that the term "fiduciary" be construed broadly. *See, e.g., Consolidated Beef Indus. v. New York Life Ins. Co.,* 949 F.2d 960, 964 (8th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992); *Blatt v. Marshall & Lassman,* 812 F.2d 810, 812 (2nd Cir.1987).

In his answer filed to the plaintiffs' complaint, Denison admits that he was a fiduciary of the fund. He was not only named a trustee of the fund, but, in his capacity as trustee, he signed the checks which were forwarded each month as the trust money to the investment accounts. In addition, as president of DWS, Denison assumed many of the company's responsibilities as plan administrator. *See* 29 C.F.R. § 2509.75–8 at D–3 (1991) (bulletin published by the Department of Labor interpreting definition of fiduciary under ERISA to include plan administrator or trustee); *see also*

*Freund v. Marshall and Ilsley Bank,* 485 F.Supp. 629, 635 (W.D.Wis.1979) ("By the very nature of their positions, plan trustees and a plan administrator are fiduciaries with respect to a plan").

■ In contrast to Denison, Wallace was not a named trustee or a named fiduciary of the plan.[1] Nevertheless, as many courts have pointed out, a person's title does not necessarily determine whether he is a fiduciary, but rather the definition focuses on the functions and actions of the person with respect to the plan. *See, e.g., Acosta v. Pacific Enter.,* 950 F.2d 611, 618 (9th Cir.1991); *Anderson v. Ciba–Geigy Corp.,* 759 F.2d 1518, 1522 (11th Cir.), *cert. denied,* 474 U.S. 995, 106 S.Ct. 410, 88 L.Ed.2d 360 (1985). If a person exercises management over assets, renders investment advice, or exercises discretionary administrative control, then he is a fiduciary for ERISA purposes. 29 U.S.C.A. § 1002(21)(A); *see also Ciba–Geigy,* 759 F.2d at 1522; 29 C.F.R. § 2509.75–8 at D–3.

To support their allegations that Wallace was a fiduciary of the fund, plaintiffs point to his positions as both executive vice-president and secretary of DWS. But Wallace's status as a corporate officer does not by itself make him a fiduciary of the plan. *See Confer v. Custom Engineering Co.,* 952 F.2d 34, 37 (3rd Cir.1991); 29 C.F.R. § 2509.75–8 at D–5. However, as previously stated, a person may be considered a fiduciary of a plan if he exercises individual discretionary authority over the plan and its assets. For example, in *Dardaganis v. Grace Capital, Inc.,* 889 F.2d 1237, 1242–43 (2nd Cir.1989), the president and chief executive officer of the corporation was deemed to be a fiduciary and held personally liable for breaches of fiduciary duties after it was shown that he personally exercised control and discretion over ERISA plan assets. *See also McNeese v. Health Plan Marketing, Inc.,* 647 F.Supp. 981, 984–85 (N.D.Ala.1986) (holding that corporate president was plan fiduciary after

1. In his answer to the plaintiffs' complaint, Wallace denied any status as plan fiduciary, but did not supply any probative evidence to negate the plaintiffs' claim of his fiduciary status. Wallace did not respond to the plaintiffs' motion for summary judgment.

court found he exercised discretionary authority and plan administration).

Applying this standard, a number of undisputed facts lead to the inescapable conclusion that Wallace was a fiduciary of the plan. First, the disclosure statement DWS filed in support of its bankruptcy petition identifies Wallace as one of the company's two managers. The statement provides that "The Company has been managed by two of its principals, Dana Denison and Alston Wallace," and that "The two principals have provided 'hands-on' management and directly supervise the individual contract managers at the various contract locations." Second, the bankruptcy documents DWS filed indicate no significant distinction between the roles of Denison and Wallace in the management of the corporation. Although they held different titles, they received the same compensation and shared equally in the management of the corporation. Indeed, Wallace, along with Denison, signed both the trust agreement and the document establishing the plan. Third, because, as noted above, DWS was the designated administrator of the employee benefit plan, part of the management of the company included the administration of the plan. Finally, it appears that Denison and Wallace, as the only two principals in this closely held corporation, retained all control over the administration and management of the plan. According to the trust agreement, DWS was required to appoint a committee to administer the plan, but there is no evidence that either Denison and Wallace appointed such a committee or that they delegated the corporation's administrative responsibilities to a third party. In sum, the evidence reflects that Wallace and Denison were not only managers of DWS, they were also de facto joint administrators of the employee welfare plan.

### B. Did Denison and Wallace Breach Their Fiduciary Duties?

ERISA places a number of obligations on a fiduciary. First, a fiduciary is required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of ... (i) providing benefits to participants and their beneficiaries[ ] and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C.A. § 1104(a)(1). Second, a fiduciary is required to discharge these duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* Finally, a fiduciary must not "deal with the assets of the plan in his own interest or for his own account," 29 U.S.C.A. § 1106(b)(1), but rather must take appropriate steps to assure that "the assets of a plan shall never inure to the benefit of any employer." 29 U.S.C.A. § 1103(c)(1). In drafting ERISA's standards of fiduciary conduct, therefore, Congress invoked the common law of trust and traditional trust principles to define the general scope of fiduciary authority and responsibility, *NLRB v. Amax Coal Co.,* 453 U.S. 322, 332–33, 101 S.Ct. 2789, 2795–96, 69 L.Ed.2d 672 (1981), and included among these "strict standards of trustee conduct, ... most prominently, a standard of loyalty and a standard of care." *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985).

Plaintiffs contend that Denison and Wallace breached their fiduciary duties in two ways: first, that they failed to segregate plan assets and deposit them in the plan fund; and, second, that they failed to warn employees that employee and employer contributions were not being made to plan.

#### 1. *Segregation of Plan Assets*

■ One of the fundamental principles of trust law is that a fiduciary has the duty to separate strictly trust property from his own property and to avoid the commingling of funds. The segregation of funds serves to prevent conflicts between a fiduciary's personal interests and his duty of loyalty to the beneficiary of the trust. *See Bird v. Stein,* 258 F.2d 168, 177 (5th Cir.1958), *cert. denied,* 359 U.S. 926, 79 S.Ct. 608, 3 L.Ed.2d 628 (1959); Restatement (Second) of Trusts § 179. This duty to segregate

trust assets applies not only to traditional trusts but also to benefit plans covered under ERISA. *See, e.g., Corley v. Hecht Co.,* 530 F.Supp. 1155, 1163 (D.D.C.1982) (holding employer liable for breach of fiduciary duty for failure to segregate trust assets).

Segregation of assets is particularly important in situations where a fiduciary serves in dual capacities as an official of an employer and as plan fiduciary. Although ERISA specifically allows a corporate officer to serve as a plan fiduciary, courts have emphasized that those who wear "two hats" should proceed with caution because of potential conflicts of interest.[2] The Eleventh Circuit Court of Appeals has stated that the dual role of corporate officer and plan fiduciary imposes a duty on fiduciaries to "avoid placing themselves in a position where their acts as officers or directors of their corporation will prevent their functioning with the complete loyalty to participants demanded of them as Trustees of a pension plan." *Deak v. Masters, Mates and Pilots Pension Plan,* 821 F.2d 572, 580–81 (1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988) (quoting *Donovan v. Bierwirth,* 680 F.2d 263, 271 (2nd Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982)).

■ The plaintiffs contend that Denison and Wallace breached their fiduciary duties by failing to segregate and pay into the fund the *employer contributions* required by the plan. The plaintiffs contend that, once the employer contributions were due and owing, they became fund assets which Denison and Wallace were required as fiduciaries to turn over to the fund. The court cannot agree with the plaintiffs' characterization. In *Local Union 2134 v. Powhatan Fuel, Inc.,* 828 F.2d 710 (11th Cir.1987), a corporate president, on the eve of filing a petition in bankruptcy, failed to pay premiums for employee health care coverage causing the policy to lapse. The appellate court held that the president's decision not to pay the premiums was made in his capacity as a corporate officer, not as a plan fiduciary. The ruling was based on the fact that the premiums were to be paid out of general corporate funds and that until the premiums were actually paid to the plan they were not plan assets. Here similarly, until Denison and Wallace paid the employer contributions to the plan the contributions did not become plan assets over which Denison and Wallace bore a fiduciary obligation. Denison and Wallace's failure to make employer contributions to the plan did not breach any of their fiduciary obligations. *See also Young v. West Coast Indus. Relations Ass'n,* 763 F.Supp. 64 (D.Del.1991) (delinquent employer contributions at issue should be treated as debts owed to the pension plan, rather than as trust fund assets), *aff'd,* 961 F.2d 1570 (3rd Cir.1992) (table).[3]

■ However, the court agrees with the plaintiffs that Denison and Wallace breached their fiduciary duties by failing to segregate and pay to the fund the withheld *employee contributions.* Under the terms of the trust and collective bargaining agreements between DWS and PHPA, Denison and Wallace were obligated to deposit each pay period with a plan trustee the wages withheld from employee salaries for contribution to the plan. Because these contributions were to be held as a trust fund for the benefit of the participating employees, the contributions became plan assets subject to ERISA once the wages were deducted from paychecks for deposit into the fund, even before delivery to the plan. *See United States v. Grizzle,* 933 F.2d 943, 947 (11th Cir.1991) (employee contributions to employee fund were funds of employee benefit plan within meaning of

---

**2.** ERISA states that "Nothing in ... this title shall be construed to prohibit any fiduciary from ... serving as a fiduciary in addition to being an officer, employee, agent, or other representative of a party in interest." 29 U.S.C.A. § 1108(c)(3).

**3.** The decision in *Galgay v. Gangloff,* 677 F.Supp. 295 (M.D.Pa.1987), is not applicable. There, the district court held that unpaid employer contributions were plan assets because the language of collective bargaining agreement expressly provided that the contributions became "vested" fund assets when they were due and owing. Here, there is no similar language.

statute prohibiting embezzlement of such funds, even though employer and president never turned over such contributions to plan), *cert. denied,* —— U.S. ——, 112 S.Ct. 271, 116 L.Ed.2d 223 (1991); *Pension Benefit Guaranty Corp. v. Solmsen,* 671 F.Supp. 938 (E.D.N.Y.1987) (holding that diversion of employee contributions before they reached investment account constituted misuse of plan assets).

Denison and Wallace did not place the deductions from employee salaries into a separate trust fund. From October 1985 to June 1986, they placed these trust assets into the general corporation account. From October 1985 to March 1986, payments were made to the plan and then to three separate investment accounts, but, from April to June 1986, the funds were never forwarded to the plan or the investment accounts. Denison and Wallace have not accounted for the money representing the employee contributions to the plan for the months of April through June. It is clear, however, that they retained authority and control over these funds during this time. Because DWS did not have these assets available for deposit to the fund when it declared bankruptcy in July 1986, there is no other choice but to conclude that the trust fund assets were diverted for purposes other than for the exclusive benefit of the pension plan participants and beneficiaries.

Denison attempts to attribute this failure to transfer the employee contributions to the fund to two outside factors: first, a delay in receiving instructions from the pension management firm regarding the allocation of contributions and, second, the United States Army's withholding of DWS's last check. Denison's excuses are without merit. The instructions from the firm merely indicated to which investment accounts the fund was to allocate its assets. Denison and Wallace's obligation to segregate the employee contributions from general corporate assets and to deposit them into the fund arose once deductions were taken from employees salaries. The pension management firm's instructions in no way affected the duty to deposit contributions into the plan. Similarly, the Army's withholding of DWS's last check had no effect on DWS's obligation to transfer employee contributions to the plan. The employee contributions should have been kept separate from corporate assets and available for immediate transfer to the fund.

### 2. *Failure to Warn*

Plaintiffs also allege that Denison and Wallace breached their fiduciary duties by failing to notify DWS's employees that employee and employer contributions were not being made to the plan fund and to investment accounts so that employees could withdraw their participation from the plan. A fiduciary, at the very least, has an obligation to notify employees of the employer's failure to contribute to the pension fund as required by the trust or collective bargaining agreement. *See, e.g., Rosen v. Hotel and Restaurant Employees & Bartenders Union,* 637 F.2d 592, 600 (3rd Cir.), *cert. denied,* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981); *Pension Benefit Guaranty Corp. v. Solmsen,* 671 F.Supp. 938, 946 (E.D.N.Y.1987); *McNeese v. Health Plan Marketing, Inc.,* 647 F.Supp. 981, 986 (N.D.Ala.1986). In *Rosen,* the appellate court explained the importance of a fiduciary's obligation to inform the plan participants and beneficiaries of an employer's failure to make the required plan contributions: "If a trustee's fiduciary duty requires anything in the administration of the trust, it requires him to inform the pensioners of their employer's failure to make the required contributions to the fund. Continued eligibility is the core of the trustee beneficiary relationship and those responsible for the administration of the fund are required to notify pensioners when their employer jeopardizes their eligibility." 637 F.2d at 600.

Neither Denison nor Wallace made any effort to notify plan participants concerning DWS's failure to deposit deducted paycheck contributions or to make the required employer contributions. This failure constituted a breach of Denison and Wallace's fiduciary obligations to the plan and its participants. Without notice, the employees of DWS were unable to withdraw their

participation and make other pension plan arrangements.

## IV. DAMAGES

Plaintiffs request damages to the extent of the loss to the plan, along with interest and attorney's fees. Plaintiffs have shown the required "causal connection" between the breach of fiduciary duty and losses to the plan. *Brandt v. Grounds,* 687 F.2d 895, 898 (7th Cir.1982). Plaintiffs are therefore entitled to recover from Denison and Wallace the amount owed to the plan. However, the court is unable to determine the precise amount owed to the plan. Denison contests plaintiffs' calculations of the amount due to the plan.

Accordingly, it is ORDERED:

(1) That the motion for summary judgment filed by plaintiffs on July 6, 1992, is granted to the extent that it is DECLARED that:

(a) Defendants Dana Denison and Alston Wallace are fiduciaries of the employee welfare plan at issue;

(b) Defendants Denison and Wallace breached their fiduciary duties by failing to segregate and deposit in the plan's fund those wages withheld from employees as contributions to the fund; and

(c) Defendants Denison and Wallace breached their fiduciary duties by failing to notify employees that employee and employer contributions were not being made to the fund; and

(2) That said motion is denied in all other respects.