In re COLLEGE BOUND, INC., Debtor.

Bankruptcy No. 92–31457–BKC–RAM.

United States Bankruptcy Court,
S.D. Florida.

Sept. 27, 1994.

---

Jefferson P. Knight, Miami, FL, for Plan Trustee.

Steven J. Solomon, Stroock & Stroock & Lavan, Miami, FL, for Bankruptcy Trustee.

## SUPPLEMENTAL MEMORANDUM OPINION

ROBERT A. MARK, Bankruptcy Judge.

Before the Court is a motion for turnover of funds filed by Jonathan E. Kroner ("Kroner" or "Plan Trustee"), the successor administrator and trustee of the College Bound, Inc. 401(k) Retirement Plan and Trust ("the 401(k) Plan" or "Plan"). The Plan Trustee seeks turnover from the Chapter 11 Trustee of monies including both withheld employee contributions and matching employer contributions to the 401(k) Plan owed for periods prior to the April 29, 1992 commencement of this Chapter 11 case (the "filing date"). The issue presented is whether the monies in question are property of the bankruptcy estate, or assets of the 401(k) Plan.

The Court has reviewed the memoranda, read the relevant cases and considered the oral argument presented by counsel. The Court concludes that the withheld *employee* contributions are property of the 401(k) Plan subject to turnover by the Bankruptcy Trustee. The *employer* contributions for both 1991 and 1992 are property of the bankruptcy estate.[1]

### BACKGROUND FACTS

In 1991, the Debtor, College Bound, Inc. ("Debtor"), established a deferred profit sharing plan, commonly referred to as a "401(k) Plan."[2] The Plan had an effective date of January 1, 1991. The terms of some 401(k) plans, including the one at issue, obligate the employer to "match" a portion of the employees' contributions to the plan. The Debtor originally designated itself as the Plan Administrator, and appointed two of its officers as the Plan's trustees. Throughout 1991, the agreed-upon amounts were with-

---

1. On October 20, 1993 the Court announced its ruling on the record together with its findings and conclusions. An order in accordance with the findings and conclusions was entered on November 1, 1993. No appeal was taken. The Court is publishing this Supplemental Memorandum Opinion because of the limited published authority on these issues.

2. The reference is to § 401(k) of the Internal Revenue Code. Income withheld from employee/participants' paychecks for contribution to a 401(k) plan is not included in their gross income. The employer also receives certain tax benefits for providing a 401(k) plan.

held from the bi-weekly paychecks of Debtor's participating employees. The withheld funds were then forwarded to the 401(k) Plan's investment manager, the American Funds Group of Brea, California ("American").

The motion before this Court involves $94,652.33, which consists of four (4) separately identifiable sums: (1) contributions withheld from the Debtor's employees' paychecks during March, 1992, in the amount of $25,300.95; (2) contributions withheld from the Debtor's employees' paychecks for the first two weeks of April, 1992, in the amount of $9,771.59; (3) the Debtor's matching contribution for 1991 in the amount of $37,880.65; and (4) the Debtor's matching contribution for 1992 in the amount of $21,699.14.

On April 16, 1992, prior to the filing date, the Debtor issued a check to American in the amount of $25,300.25 for the first sum identified above, that is, the Plan contributions withheld from its employees during March, 1992. On April 17, 1992, the Debtor issued an additional prepetition check to American in the amount of $37,880.65, representing the third sum identified above, namely the Debtor's 1991 matching contribution. These two checks will be referred to as the "Prepetition Checks." The checks were physically received by American, which provisionally credited the 401(k) Plan's investment accounts on April 27, 1992. On April 29, 1992, before the funds cleared the Debtor's bank account, the Debtor filed its Chapter 11 petition, and the account was closed. The checks were then returned to American, which nullified the provisional credits, and debited the 401(k) Plan's accounts.

Because the Prepetition Checks did not clear prior to the filing date, none of the monies at issue were actually received by the 401(k) Plan as of the filing date. Moreover, neither the funds representing the employee withholdings nor the amounts required for the Debtor's matching contribution were segregated from the Debtor's other available funds.

Shortly after the filing of the Chapter 11 Petition, Joseph V. Del Raso was appointed as Chapter 11 Trustee ("Bankruptcy Trustee"). On December 7, 1992, Kroner was appointed as successor 401(k) Trustee by order of this Court, *nunc pro tunc* to August 19, 1992. Kroner filed a proof of claim on behalf of the Plan.

## DISCUSSION

■ The starting point for analysis of the Plan Trustee's motion is § 541(a) of the Bankruptcy Code, which provides that the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Included within this broad definition are funds held in a debtor's bank accounts at the date the bankruptcy petition is filed. *See In re Patterson,* 967 F.2d 505 (11th Cir.1992) (funds in debtor's savings and checking accounts became property of the debtor's estate upon the filing of the bankruptcy petition); *In re Hoffman,* 51 B.R. 42 (Bankr. W.D.Ark.1985) (upon filing of the bankruptcy petition, funds on deposit at a bank become property of the estate). Thus, absent any applicable exception, all of the funds contained in the Debtor's checking accounts as of the filing date are property of the bankruptcy estate.

The Plan Trustee argues that the monies were held in trust by the Debtor for the benefit of the Plan. Under § 541(d), property held in trust by the Debtor as of the filing date is not property of the estate. *See In re California Trade Technical Schools, Inc.,* 923 F.2d 641 (9th Cir.1991); *Mid–Atlantic Supply, Inc. of Virginia v. Three Rivers Aluminum Co.,* 790 F.2d 1121 (4th Cir.1986); *In re Quality Holstein Leasing,* 752 F.2d 1009 (5th Cir.1985). Thus, the issue here is whether the monies owed to the Plan were simply a debt as of the filing date, or whether the monies were held in trust and should be excluded from the estate. As a separate but related issue, the Court must also determine whether the issuance of the Prepetition Checks affects the characterization of the funds represented by those checks.

### A. Issuance of the Prepetition Checks Did Not Affect the Character of the Funds

■ Employee contributions for March, 1992 and the employer contributions for 1991

were sent to the Plan by checks issued before the filing date. The checks did not clear and under Florida law, the monies are deemed to have never left the Debtor's general checking account.

◼ Florida Statutes Chapter 674 governs the respective rights and obligations of parties where a check is given as payment for a debt and the check subsequently enters the bank collection process. Under § 674.215, until such time as the payor bank (the Debtor's bank in the present case) makes "final settlement" on the check, there has been no effective or actual transfer of funds from the payor's account.[3] Rather, the payee (the 401(k) Plan) only receives a "provisional credit" which can be revoked upon the check's dishonor. Until final settlement on the check by the payor bank, the Debtor still retains control over the funds evidenced by the check.[4] See Gelco Corp. v. United National Bank, 569 So.2d 502 (Fla.App.3d Dist. 1990); Heumann v. United National Bank of Dadeland, 287 So.2d 99 (Fla.App.3d Dist. 1973).

Both the Plan Trustee and the Bankruptcy Trustee agree that the prepetition checks were returned by the Debtor's bank because the accounts were closed as of the filing date. Since the checks "bounced," final settlement was never made on these checks. No funds were ever deducted by the Debtor's bank from the Debtor's general checking account to settle the Prepetition Checks. The funds evidenced by the Prepetition Checks never left the estate and are property of the estate unless otherwise deemed to be held in trust on the filing date. Thus, in deciding the matter at issue, the Court finds no distinction between the amounts represented by the Prepetition Checks and the other unpaid amounts owed on the filing date.

### B. The Employee Contributions Were Held In Trust By the Debtor on the Filing Date

◼ Having determined that the funds were not paid or even segregated prepetition notwithstanding the issuance of checks for two of the sums owed, the Court must next determine whether the employee or matching employer contributions were held in trust by the debtor.

The Eleventh Circuit has analyzed the same issue in the context of a criminal conviction. United States v. Grizzle, 933 F.2d 943 (11th Cir.), cert. denied — U.S. —, 112 S.Ct. 271, 116 L.Ed.2d 223 (1991). In Grizzle, a corporate employer and its president were convicted of embezzling assets from an ERISA–governed employee vacation plan. The money had been withheld from employees' paychecks but it was never deposited into the vacation plan's account, or even segregated from the employer's general assets. Instead, it was commingled with the corporation's general funds. The defendants argued, just as the Bankruptcy Trustee does here, that the withheld funds never became plan assets. Thus, they claimed that they could not be convicted of embezzling plan assets.

The Eleventh Circuit disagreed and affirmed the conviction. The court cited to a 1989 Department of Labor regulation clarifying the scope of "plan assets" for purposes of Title I of ERISA. The regulation provides in pertinent part as follows:

"[T]he assets of [an ERISA] plan include amounts ... that a participant has withheld from his wages by an employer, for

3. Florida Statutes § 674.215 outlines when "final settlement" on a check occurs. This section provides in relevant part:

(1) An item is finally paid by a payor bank when the bank has first done any of the following:
(a) Paid the item in cash;
(b) Settled for the item without having a right to revoke the settlement under statute, clearinghouse rule, or agreement; or
(c) Made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearinghouse rule, or agreement.

\* \* \* \* \* \*

(2) If provisional settlement for an item does not become final, the item is not finally paid. Fla.Stat. § 674.215 (1992).

4. For instance, upon until final settlement, the Debtor is still entitled to stop payment on any check written and delivered to the payee. Gelco Corp. v. United National Bank, 569 So.2d 502, 504 (Fla.App.3d Dist.1990).

contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets ·..."

29 C.F.R. § 2510.3–102 (emphasis added).

Applying this regulation, the Eleventh Circuit found that the contributions were plan assets:

> Thus, the assets of employee benefit plans subject to ERISA include employee contributions to benefit plans which are withheld from employees' paychecks and for deposit into their benefit plans, *even though the contributions have not actually been delivered to the benefit plan.*

933 F.2d at 947 (emphasis added).

The Bankruptcy Trustee's attempts to distinguish *Grizzle* are unavailing. Although *Grizzle* was a criminal case, the issue was squarely addressed and decided. Payment to the Plan is not the event that triggers transfer ·of property from the Debtor to the Plan. Instead, once the employees are paid and the employee contributions withheld, the withheld monies are deemed to be held in trust for the Plan, even if the funds remain in the Debtor's general checking account. *See also Professional Helicopter Pilots Ass'n v. Denison,* 804 F.Supp. 1447 (M.D.Ala.1992) (withheld employee wages became plan assets as soon as wages were deducted).

■ The Court also rejects the Bankruptcy Trustee's argument that the funds would have to· be traceable to create an enforceable trust. Since the funds are deemed to be assets of the Plan under an express statutory trust, the tracing requirement does not apply. *See In re California Trade Technical Schools, Inc.,* 923 F.2d 641 (9th Cir.1991); *see also Universal Bonding Ins. Co. v. Gittens & Sprinkle Enterprises, Inc.,* 960 F.2d 366 (3d Cir.1992). As long as the Debtor had funds in excess of the employee withholdings, the amounts withheld from employee wages are deemed trust funds. Therefore, the March and April employee contributions are property of the Plan subject to turnover by the Bankruptcy Trustee.

### C. The Funds Owed for Employer Contributions Are Property of the Bankruptcy Estate

■ Neither the language in the Department of Labor regulation nor the holding in *Grizzle* support a trust argument for the unpaid employer contributions. In fact, the *Denison* case cited earlier discussed *Grizzle* and distinguished between unpaid employee and employer contributions. *Professional Helicopter Pilots Association v. Denison,* 804 F.Supp. at 1453.

In *Denison,* employee representatives and the ERISA Plan trustee sued corporate officers of the employer claiming breach of fiduciary duty. The suit arose out of the employer's failure to deposit both employee and employer contributions into the plans. To determine whether the defendants breached a fiduciary duty, the court analyzed whether the unpaid employee and employer contributions were plan assets or corporate funds.

Applying the *Grizzle* holding, the *Denison* court held that the withheld employee wages became plan assets as soon as the wages were deducted even though the money was never paid to the plan. *Id.* at 1453. The court reached the opposite conclusion as to the employer contributions. Citing *Local Union 2134, United Mine Workers of America v. Powhatan Fuel, Inc.,* 828 F.2d 710 (11th Cir.1987), the court held that "until [the defendants] paid the employer contributions to the plan, the contributions did not become plan assets." *Denison,* 804 F.Supp. at 1453.

This Court agrees with *Denison*'s distinction between employee monies withheld from wages and unpaid employer contributions. Absent express statutory or regulatory provisions creating a trust for employer contributions, a 401(k) Plan has no rights to the contributions until they are actually paid. Thus, the Court finds that the unpaid employer contributions for both 1991 and 1992 are assets of the bankruptcy estate.

### CONCLUSION

In passing the Employee Retirement Income Security Act of 1974 ("ERISA"), Congress sought to protect pension benefits. *Patterson v. Shumate,* — U.S. —, 112

S.Ct. 2242, 119 L.Ed.2d 519 (1992). The rights and obligations created by ERISA, the pertinent Department of Labor regulation, and the Eleventh Circuit's decision in *Grizzle* compel a finding that once employee wages are withheld for purposes of contribution to an ERISA qualified plan, the wages become plan assets held in trust by the employer. This is true even if the monies were not segregated, provided that the monies were available in the Debtor's general funds. The trust obligation does not extend to unpaid employer contributions.

By separate order entered in accordance with these findings and conclusions, the Trustee was directed to turn over to the Plan Trustee the March 1992 employee contributions in the amount of $25,300.95 and the prepetition April 1992 employee contributions in the amount of $9,771.59 for a total of $35,072.54. The motion for turnover of the 1991 and 1992 employer contributions was denied without prejudice to the Plan Trustee pursuing his proof of claim.