## In re RIVERSIDE ELECTRIC CO., Debtor.

**Bankruptcy No. 96–48338–293.
Motion No. 93.**

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

June 18, 1997.

Rhona S. Lyons, St. Louis, MO, for Movant.

Edgar E. Lim, St. Louis, MO, for Debtor.

David A. Sosne, St. Louis, MO, Chapter 11 Trustee.

### MEMORANDUM OPINION

DAVID A. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), which the Court may hear and determine.

### FACTUAL BACKGROUND

On February 10, 1997, the Trustees ("401(k) Trustees") of the Electricians' Salary Deferral Plan of Local No. 1 IBEW–St, Louis Chapter, NECA ("401(k) Plan") filed a Motion for Payment of Withheld 401(k) Contributions and Objection to Payment of Settlement Funds to Boatmen's National Bank of St, Louis ("Boatmen's"). The Court heard argument on the 401(k) Trustees' motion on June 3, 1997. Counsel for Boatmen's appeared at the hearing and orally opposed the 401(k) Trustees' motion. At the hearing, Boatmen's and the 401(k) Trustees submitted a stipulation of facts to the Court for its use in deciding only the issue presented by the 401(k) Trustees' motion.[1]

Among the stipulated facts are:

1. From August 1996 until October 1996, Riverside Electric Company ("Riverside") maintained two checking accounts at Lemay Bank. One account was designated as a general operating account and the other account was specifically designated as Riverside's payroll account.

2. From August 1996 to October 1996, Riverside did not maintain any other bank accounts.

---

1. The stipulation of facts was also agreed to by Debtor's other secured creditors, Bel Aire Asset Management, Ltd. and Lemay Bank and Trust Company ("Lemay Bank").

3. When Riverside received payment for a job the money received was usually, but not always, deposited into its operating account at Lemay Bank.

4. Employee paychecks were usually, but not always, paid out of the payroll account at Lemay Bank.

5. Funds to cover paychecks written on the payroll account were usually, but not always, received via transfers from Riverside's operating account.

6. From August 1996 until October 1996, Riverside experienced severe financial difficulties and was in financial turmoil. Previously established practices and procedures were not always followed. The company was frequently overdrawn on its accounts at Lemay Bank and was in certain instances forced to pay vendors, suppliers, and employees by cashiers check or cash.

7. From August 1996 until October 1996, Riverside was a signatory to a CBA with IBEW Local 1.

8. The CBA allowed for salary deferral/401 (k) contributions by the union employees.

9. From August 1996 to October 1996, certain employees had money withheld from their paychecks for salary deferral–401(k) contributions.

10. If the employees had not elected salary deferral, they would have been paid the withheld amount with the rest of their paycheck.

11. Prior to August 1996 it was the practice of Riverside to transmit withheld 401(k) amounts to the Salary Deferral Plan by sending a check for the amount withheld during a particular month to the fund as set out in the CBA.

12. Until contributions were transmitted to the Plan, the amounts withheld for 401(k)salary deferral were, if they existed, maintained in Riverside's operating bank account.

13. In most instances checks for the 401(k) and other employee benefit contributions were written on Riverside's operating account. In addition to the stipulated facts, the Court makes the following findings from the record:

14. Riverside filed a petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101–1330, "Code") on October 8, 1996.

15. On the trustee's motion, Riverside's case was converted to one under Chapter 7 of the Code.

16. During September 1996, the balance in Riverside's payroll account (numbered 41–77291) varied between $3,365.82 on the 26th and negative $52,021.12 on the 20th of the month. On October 8, 1996, the Debtor's payroll account at Lemay Bank had a negative balance of $11,768.54.

17. During the month of September 1996, Riverside deposited $148,638.38 into its payroll account and in October 1996, it deposited $16,312.78 into that account.

18. During September 1996, the balance in Riverside's operating account (numbered 41–77309) varied between $3,995.99 on the 11th and negative $136,198.09 on the 5th of the month.

19. During the month of September 1996, Riverside deposited $237,845.43 into its operating account.

20. During August 1996, Riverside withheld $9,165.95 from employee paychecks as voluntary employee contributions to the 401(k) Plan.

21. During September 1996, Riverside withheld $5,925.75 from employee paychecks as voluntary employee contributions to the 401(k) Plan.

At the hearing held on the 401(k) Trustees' motion, counsel for the Trustees argued that, under 29 CFR § 2510.3–102,[2] the employee contributions that Riverside withheld from its employees' paychecks in August and September of 1996 were held in trust for the

---

2. 29 CFR § 2510.3–10 provides that "The assets of [an ERISA] plan include amounts … that a participant has withheld from his wages by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets …"

employees. Counsel for the 401(k) Trustees maintained that the 401(k) Plan was entitled to recover the trust funds from the proceeds of the accounts receivable that the bankruptcy trustee settled post-petition; she justified her stance with an extension of the reasoning of the United States Bankruptcy Court for the Southern District of Florida in *In re College Bound, Inc.,* 172 B.R. 399 (Bankr. S.D.Fla.1994).

Counsel for Boatmen's first argued that because there was no money in Riverside's bank account when the bankruptcy case was filed, the corpus of any trust that might have existed was gone; he distinguished the *In re College Bound* case on the ground that the debtor in that case had funds in its bank account when it withheld its employees' 401(k) contributions from their paychecks. Second, Counsel for Boatmen's argued that equity barred the relief sought by the 401(k) Trustees because the union representing Riverside's employees knew of the debtor's precarious financial condition in the months before filing (as demonstrated by its insistence that Riverside's employees be paid in cashiers checks) and yet had not sought to alter the withholding procedure. As another equitable concern, Counsel for Boatmen's pointed out that Riverside's secured creditors have financed the collection of the accounts receivable from which the movants seek to recover the withheld employee contributions. Third, counsel for Boatmen's urged the Court not to excuse the 401(k) Trustees from the traditional trust requirement of tracing the funds held in trust and maintained that application of the intermediate balance test showed the 401(k) Trustees' motion should fail. Boatmen's counsel also argued that a constructive trust did not exist because there was no wrongdoing on Boatmen's part. Finally, Counsel for Boatmen's argued that it would disrupt the Congressionally-established priority scheme to allow the 401(k) Trustees to recover the withheld employee contributions from the proceeds of the accounts receivable against which Boatmen's held a security interest.

In response to Boatmen's argument, Counsel for the 401(k) Trustees noted that the 401(k) Trustees are distinct from and independent of the Union to which the 401(k) plan contributors belong and argued that for that reason any knowledge the employees' Union may have had cannot be imparted to the Trustees. Further, Counsel argued that money flowed through the Debtor's accounts after the employee contributions were withheld from the employees' paychecks and that the money that flowed through the accounts became trust assets upon entry into the account subsequent to the withholding. Finally, Counsel for the Trustees acknowledged that the movants were asking the Court to expand the law but argued that requiring, as a condition to the recognition of a trust, that the Debtor have cash in its account when it withholds employee contributions would defeat the policy underlying ERISA.

## DISCUSSION

The 401(k) Trustees base their request for payment of the withheld employee contributions from the account receivable Riverside pledged to Boatmen's on the reasoning of *In re College Bound, Inc.,* 172 B.R. 399 (Bankr. S.D.Fla.1994). In that case, the debtor (College Bound) withheld employee 401(k) plan contributions pre-petition. Post-petition, the trustee of the 401(k) plan moved the bankruptcy court for turnover of funds in College Bound's bank accounts. The bankruptcy court determined that despite not being segregated pre-petition, the funds College Bound withheld were "deemed to be held in trust for the [401(k)] Plan, even if the funds remain[ed] in [its] general checking account." *Id.* at 402–03.

In reaching its conclusion, the *College Bound* court looked to, *United States v. Grizzle,* 933 F.2d 943 (11th Cir.) *cert. denied* 502 U.S. 897, 112 S.Ct. 271, 116 L.Ed.2d 223 (1991), a criminal case in which the Eleventh Circuit affirmed the conviction of two defendants for embezzling from their employees' 401(k) plan. *Id.* at 402. The *Grizzle* defendants' argued that they did not embezzle assets from their employees' 401(k) plan because, although they had withheld the employees' plan contributions from their paychecks, they never deposited them in the 401(k) account and therefore, the withheld sums were not assets of a 401(k) plan. *Id.* The *College Bound* court noted that, in re-

688

jecting the defendants' argument, the *Grizzle* court cited 29 CFR § 2510.3–102 and held that the defendants had embezzled 401(k) plan assets because "the assets of employee benefit plans subject to ERISA include employee contributions to benefit plans which are withheld from employees' paychecks and for deposit into their benefit plans, even though the contributions have not actually been delivered to the benefit plan." *Id.* (citing *United States v. Grizzle*, 933 F.2d 943, 947 (11th Cir.) cert. denied 502 U.S. 897, 112 S.Ct. 271, 116 L.Ed.2d 223 (1991)).

Applying *Grizzle* to the facts before it, the *College Bound* court reasoned that "once the employees are paid and the employee contributions withheld, the withheld monies are deemed to be held in trust for the [401(k)]Plan, even if the funds remain in the Debtor's general checking account." 172 B.R. at 402. The *College Bound* court rejected the bankruptcy trustee's argument that the 401(k) trustee needed to trace the funds because it read 29 CFR § 2510.3–102 as creating a statutory trust of the withheld contributions and held that "[a]s long as the Debtor had funds in excess of the employee withholdings, the amounts withheld from employee wages are deemed trust funds." *Id.* at 403.

The case before the Court differs significantly from *In re College Bound* and the *Grizzle* case upon which it relied in that, unlike the withholders of 401(k) contributions in those cases, Riverside did not have any funds in its bank accounts when it "withheld" the employees' 401(k) contributions from their paychecks. Hence, the withheld funds cannot, and never could be, identified or traced. Counsel for the 401(k) Trustees acknowledged this distinction in court and asked the Court to extend the reasoning of *College Bound* and order the payment of the withheld contributions from the accounts receivable in which Boatmen's holds a security interest. The Court ·cannot so extend the reasoning of *In re College Bound* and, in fact, questions whether the extension of reasoning the Trustees urge the Court to make is more a leap of logic than an extension of a principle.

To allow the Trustees to recover the withheld contributions from the proceeds of the accounts receivable in which Boatmen's has an interest would disrupt the Code's priority and distribution systems. Section 506(c) of the Code, allows the trustee to "recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." Extending *In re College Bound* in the manner suggested by the 401(k) Trustees would grant the 401(k) Trustees a status superior to that of the bankruptcy case trustee Congress sought to protect with section 506(c).

The Court also finds instruction in two Third Circuit cases. In the first case, *In re Penn Central Transportation Company*, 486 F.2d 519, 524 (3rd Cir.1973)(hereinafter *Penn Central*), the Third Circuit held that a destination railroad holds in trust· the amounts representing transportation and freight charges that it collects on behalf of interline carriers. In the second case, *In re Lehigh and New England Rwy. Co.*, 657 F.2d 570 (3rd Cir.1981)(hereinafter *Lehigh*) the court was asked to determine whether "once a railroad has gone into receivership and has expended all of its general funds, may the balance of unpaid interline claims be paid out of mortgaged assets prior to the satisfaction of the mortgage bondholders' secured claim?" *Id.* at 571. The *Lehigh* court emphasized that the *Penn Central* decision "did not discuss what priority, if any, interline claimants should receive ahead of other creditors once railroad operations have ceased and there has been a complete dissipation of all funds with which the trust funds were commingled." 657 F.2d at 577. The *Lehigh* court then applied traditional trust law and found that the interline claimants could not recover the amounts owed them from the proceeds of the mortgaged property. The Third Circuit explained that because the interline claimants in *Lehigh* could not trace their interests to the proceeds of the mortgaged property, they had "never established ... a claim to that property." *Id.* at 579. The *Lehigh* court noted that its decision "comport[ed] with the protection which

... [it] had consistently assured security interests in other contexts." *Id.*

The Court agrees with the Third Circuit's reasoning. Here, the 401(k) Trustees seek payment of withheld employee contributions from the proceeds of assets, accounts receivable, mortgaged to Boatmen's. To grant the 401(k) Trustees' request would grant the 401(k) Plan an interest in property to which it cannot establish a claim and would contradict the treatment generally afforded secured creditors, as well as section 506(c) of the Code.

An Order consistent with this Memorandum Opinion will be entered this date.