### In re U.S. LAN SYSTEMS CORPORATION, Debtor.

### Bankruptcy No. 97–11467–SSM.

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Sept. 2, 1998.

David T. Russell, Russell & Russell, P.C., Falls Church, VA, for Marilyn Keyes, Steven Weinberg, Carolyn Shamlin, and Eric Edmonson.

Stanley M. Salus, Wickwire Gavin, P.C., Vienna, VA, for debtor in possession.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL,
Bankruptcy Judge.

This matter is before the court on a motion filed by four of the debtor's former employees to alter or amend a prior order of this court entered June 17, 1998, that had partially granted and partially denied their motion to compel payment of amounts withheld from their salary that should have been—but were not—paid into a 401(k) plan. Argument on the motion to alter or amend was heard on July 21, 1998, and the court then took the matter under advisement. For the reasons stated, the motion to alter or amend will be granted, and the court will impose a constructive trust on $10,714.41 of the debtor's unencumbered assets, but no payment will be ordered at the present time, since it has not yet been determined what portion, if any, of the debtor's remaining assets are unencumbered.

### Facts

U.S. Lan Systems Corporation ("the debtor") is a software developer. It filed a voluntary petition under chapter 11 of the Bankruptcy Code in this court on March 3, 1997, and remains in control of its estate as a debtor in possession, although its business operations, as such, ceased on May 26, 1998, when all of its assets were sold.[1] At the present time, its only assets

---

1. The purchase price was $200,000.00 in cash plus the assumption of Federal and State tax liabilities in the amount of $502,720.88. The sale was free and clear of liens, with the liens attaching to the proceeds of sale. The order approving the sale recited that there were 11

consist of the sales proceeds, which are being held in escrow pending a resolution of various claims.

Prior to the commencement of the chapter 11 case, the debtor had maintained for its employees a retirement savings plan established under § 401(k) of the Internal Revenue Code ("the 401(k) plan"). Under the plan, participating employees could elect to have sums withheld from their salary for payment into a retirement savings account. Prior to the filing of the chapter 11 petition, the debtor had withheld $36,966.09 in 401(k) plan contributions from the salary of 13 employees. Of that amount, $26,191.68 had been placed in a segregated escrow account, where it remained throughout the chapter 11 case. The remaining $10,714.41 of withheld salary was not placed in a segregated account but remained in the debtor's operating account. Although no evidence was offered as to the exact chronology, it appears to be undisputed that the all of the funds in question had been withheld approximately 12 to 18 months prior to the filing of the chapter 11 petition.

The debtor's schedules reflect that on the date it filed its chapter 11 petition, the balance in its operating account was $30,966.09. Between then, and May 1998, the operating account balance, as reflected on the monthly operating reports filed by the debtor, fluctuated from a high of $85,906.36 (April 30, 1997) to a low of $5,974.93 (October 31, 1997). On May 26, 1998, the day the debtor's assets were sold, it had approximately $7,362.25 in its operating account, all of which was used to pay current wages to its employees through the date of sale. Thereafter, the operating account of the debtor has had a zero balance. The cash proceeds from the sale of the debtor's assets in the amount of $200,000 are being held in escrow by debtor's counsel pending resolution of a claim by the purchaser for recoupment of a substantial portion of the purchase price and a secured claim by another creditor who has asserted a security interest in the debtor's assets.

On May 5, 1998, four of the debtor's former employees—Marilyn Keyes, Steven Weinberg, Carolyn Shamlin, and Eric Edmonson—filed a Motion to Compel the Debtor-in-Possession to Pay Pre-Petition Retirement Savings Plan Contributions Made by Employees.[2] A hearing was held on June 2, 1998, at which the court ruled from the bench that the $26,191.68 in the segregated account was held in trust and would be distributed to all thirteen of the affected employees in proportion to their withholdings, but that no basis had been shown for granting the employees "priority over all other claims"—as requested in the motion—with respect to the remaining $10,714.41. An order reflecting the court's ruling was entered on the docket on June 17, 1998.[3] The present motion to alter or amend was filed on June 29, 1998.[4]

### Conclusions of Law and Discussion

#### I.

The sole issue before the court, as framed by the motion to alter or amend, is

---

creditors with recorded liens against the debtor or its assets. One of those, David Mowery, has asserted a claim in the amount of $180,000. Subsequent to the closing, the court determined that the purchaser was entitled to a reduction in the purchase price of $24,709.25, and directed that that amount be refunded to the purchaser from the escrowed sales proceeds. The purchaser has appealed that order, contending that it is entitled to a significantly greater reduction.

2. Approximately two weeks prior to the filing of the debtor's chapter 11 petition, they and another employee, Dudley Clark, had filed an action against the debtor in the Circuit Court of Fairfax County, Virginia, alleging violations of ERISA.

3. The court is advised that the $26,191.68 held in the segregated account has been disbursed and is no longer an issue.

4. The ten day period under Fed.R.Bankr.P. 9023 and Fed.R.Civ.P. 59(e) for filing a motion to alter or amend would have expired on June 27, 1998. That day was a Saturday, however, and the time was accordingly extended to the following Monday, which was June 29th. Fed.R.Bankr.P. 9006(a). The motion is therefore timely.

whether the court should impose a constructive trust in the amount of $10,714.41 on the proceeds from the sale of the debtor's assets in order to pay employee claims arising from the debtor's failure, a year or more prior to the commencement of the chapter 11 case, to segregate funds withheld from the employees' salaries for payment into the company's 401(k) plan. This court has subject matter jurisdiction under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. Under 28 U.S.C. § 157(b)(2)(B), this is a core proceeding in which final judgments and orders may be entered by a bankruptcy judge.

## II.

### A.

As originally framed, the employees' argument was that the withheld funds were not property of the bankruptcy estate because of the anti-alienation provisions of ERISA and because the debtor had a continuing fiduciary duty to pay over the funds. Under § 541(a), Bankruptcy Code, the filing of a bankruptcy petition creates an "estate" composed of all legal or equitable interests of the debtor in property. However, property as to which the debtor has only legal title but not a beneficial interest becomes property of the bankruptcy estate only to the extent of the legal title and not the beneficial interest. § 541(d)(1), Bankruptcy Code. Put another way, property does not cease to be held in trust simply because the debtor files for bankruptcy. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983) ("Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition [from property of the estate]").

When property is held by the debtor in an express trust, there is seldom an issue. The extent to which prop-

erty should be recognized as being held by a debtor in a constructive or resulting trust, however, has divided the courts. Constructive trusts have been recognized in this district in those circumstances where "property has been acquired by fraud or other improper means" or "where it has been fairly and properly acquired, but it is contrary to the principles of equity that it should be retained, at least for the acquirer's own benefit." *Prime Construction Corp. v. Riverside Development Joint Venture A–1 (In re Prime Construction Corp.)*, 156 B.R. 176, 179 (Bankr.E.D.Va.1993) (Tice, J.) (original source omitted); *see also Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 206 B.R. 394, 401–02 (Bankr. E.D.Va.1997) (Tice, J.) (holding that funds entrusted by lender to real estate settlement agent were held in trust for lender and were not property of the bankruptcy estate). At the same time, courts have observed that a constructive trust—by elevating one creditor or group of creditors above the others based on the supposed moral superiority of their claims— is fundamentally at odds with the general goals of the Bankruptcy Code and should not be impressed cavalierly. *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1451 (6th Cir. 1994); *Dorfman v. Moorhous (In re Moorhous)*, 180 B.R. 138, 151 (Bankr. E.D.Va.1995) (Mitchell, J.), *aff'd* 108 F.3d 51 (4th Cir.1997). Judge Tice in *Dameron* rejected the argument, articulated by *Omegas Group*, that bankruptcy courts should give effect only to those constructive trusts that had been decreed prior to the filing of the debtor's bankruptcy petition. However, the funds at issue in *Dameron* —loan proceeds for real estate loans—had been wire transferred to the debtor's real estate settlement company under an express agreement "to hold [those] funds in escrow until it had complied with the lender's closing instructions." *Dameron*, 206 B.R. at 397. Although the opinion strongly hints that recognition of a constructive trust would

be appropriate, it does not ultimately rely on a constructive trust analysis but instead finds that the escrow agreements created an express trust. *Id.* at 402.[5]

In connection with its initial ruling, this court pointed out that the Supreme Court, in *Begier v. IRS*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990), held that money withheld from employee wages for Federal withholding taxes and social security is, under the express language of 26 U.S.C. § 7501, "held to be in a special fund in trust for the United States" even when commingled with the debtor's general funds, as long as "the amounts of withheld taxes are still in the possession of the debtor at the commencement of the case." *Begier*, 496 U.S. at 65, 110 S.Ct. at 2266 (quoting legislative history). Accordingly, the trustee could not recover, as a preference, payments that the debtor had made to the IRS on account of those liabilities in the 90 days prior to the bankruptcy on account of withholding tax liabilities since the payments were transfers of property held in trust, not property of the estate. *Id.* at 66–67, 110 S.Ct. at 2267. Although there were some superficial similarities between *Begier* and the present case (in that both involve withholding from employee pay), the employees here could point to no statute creating a special statutory trust in their favor analogous to the special statutory trust in favor of the United States created by 26 U.S.C. § 7501. Accordingly, the court ruled that while the employees were entitled to be paid their pro rata shares of the withheld 401(k) contributions

that had been placed in the segregated escrow account, they were not entitled to be paid the remaining amounts out of the sales proceeds of the debtor's assets.

## B.

A motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e), which is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9023, requires a showing that relief is proper (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir.1993). The motion currently before the court essentially argues that the prior ruling with respect to the $10,714.41 in nonsegregated funds was in error because it failed to address and to take into account the provisions of 29 U.S.C. § 1104 and 1106 and because failure to impose a constructive trust on the proceeds from the sale of the debtor's assets will result in a manifest injustice.[6]

## C.

Although no actual evidence was offered to show that the debtor's 401(k) Retirement Savings Plan was subject to, and governed, by the Employee Retirement Income Security Act of 1974 ("ERISA"),[7] the debtor in possession appears to concede the point, and the court will, for the purpose of the present motion, assume

5. "There is an additional basis to rule in plaintiffs' favor here that makes it *unnecessary for the court to consider the problematic constructive trust analysis.*" (emphasis added).

6. The motion also, to some extent, simply asks the court to rethink its prior ruling, which is not the proper function of a Rule 9023 motion. *See Durkin v. Taylor*, 444 F.Supp. 879, 889 (E.D.Va.1977) (Rule 59(e) is not intended "to give the unhappy litigant one additional chance to sway the judge.") Specifically, the court remains unpersuaded that *In re Hanes*, 162 B.R. 733 (Bankr.E.D.Va.1994)—which dealt with the exclusion, under § 541(c)(2),

Bankruptcy Code, of a *debtor's* beneficial interest in an ERISA-qualified pension plan from property of the estate—has anything to do with whether a third party's claim for funds never paid into a 401(k) plan is excluded from property of the estate under § 541(d), Bankruptcy Code. The court likewise declines to treat as controlling the unpublished and somewhat sketchy order in *In re Hover Trucking Co.*, No. 96–31774–HC (Bankr.N.D.Ind., Jan. 30, 1997).

7. Pub.L. No. 93–406, 88 Stat. 829 (1974). ERISA is codified at 29 U.S.C. § 1001 *et seq.*

that ERISA does apply. The initial question, therefore, is whether an express statutory trust is created when an employer withholds money from an employee's salary for payment into a 401(k) plan.

The only published case that appears to address this issue is *In re College Bound, Inc.,* 172 B.R. 399 (Bankr.S.D.Fla.1994), which concluded that wages which the debtor had withheld from participating employees' salaries for payment into an ERISA-qualified 401(k) plan were held in an express statutory trust by the debtor at the time of filing. In *College Bound,* the debtor/employer owed the 401(k) plan investment manager $94,625.33, of which $35,072.54 had been withheld from the employees' paychecks and $59,579.79 were matching contributions to be made by the employer. Both the withheld funds and the employer contributions were commingled with the debtor's other available funds. After the debtor filed a chapter 11 petition, the 401(k) plan trustee moved for turnover of funds in the amount of $94,-625.33.

In support of its holding that the amounts deducted from the employees' paychecks were held in a statutory trust by the debtor, the *College Bound* court cited to *United States v. Grizzle,* 933 F.2d 943 (11th Cir.1991). *Grizzle* was a criminal case where the employers were charged with embezzling funds from an ERISA qualified employee benefit plan. The issue of contention was whether employee contributions to the Vacation Fund

(part of the ERISA-qualified employee benefit plan), withheld from the employees' pay but not delivered to the fund, were "moneys, funds ... or other assets" of the plan as specified in 18 U.S.C. § 664.[8] The *Grizzle* court looked to 29 C.F.R. § 2510.3–102 (1989) issued by the Department of Labor to clarify the meaning of "plan assets" for purposes of Title I of ERISA. The regulation states in pertinent part,

> ... [T]he assets of the plan include amounts ... that a participant ... has withheld from his wages by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets, not to exceed 90 days from the date on which such amounts ... would otherwise have been payable to the participant in cash (in the case of amounts withheld by an employer from the participant's wages).

29 C.F.R. § 2510.3–102 (1989). From this definition of "plan assets," the *Grizzle* court held that funds withheld from employees' paychecks for the purpose of ERISA-qualified employee benefit plans are assets of the plan, even though the funds have not actually been delivered to the plan. *Grizzle,* 933 F.2d at 947.[9]

Based on the *Grizzle* opinion, the *College Bound* court explained that payment to the plan is not the triggering event that transfers the property from the debtor to the plan. Once the employee contributions

---

8. 18 U.S.C. § 664 ("Theft or embezzlement from employee benefit plan") provides as follows:

Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both.

As used in this section, the term "any employee welfare benefit plan or employee pension benefit plan" means any employee

benefit plan subject to any provision of title I of the Employee Retirement Income Security Act of 1974.

9. *College Bound* also held that employer matching contributions are not plan assets until the funds are actually paid to the 401(k) plan, unless there is an express statutory trust on employer's contributions. *College Bound,* 172 B.R. at 403; *see Professional Helicopter Pilots Ass'n v. Denison,* 804 F.Supp. 1447 (M.D.Ala.1992). In the present case, there is no evidence that the debtor was obligated to provide matching contributions; therefore that issue will not be further discussed.

are withheld by the employer, the funds are "deemed to be held in trust for the plan, even if the funds remain in the Debtor's general checking account." *College Bound*, 172 B.R. at 403; *see also Professional Helicopter Pilots Ass'n v. Denison*, 804 F.Supp. 1447 (M.D.Ala.1992).

■ Applying *College Bound* to the case before this court, a compelling argument can be made that an express statutory trust was created the moment the 401(k) contributions were withheld from the salary of the plan participants. As explained by the *Grizzle* opinion, once wages were withheld from the participants' salaries as contributions to the 401(k) plan, those funds become "plan assets," and no longer property of the debtor. The debtor would therefore be deemed to hold those funds in trust under the implementing regulations issued by the Secretary of Labor under the authority of ERISA.[10] While there is no evidence before the court as to the balance in the debtor's operating account between the date the $10,714.41 was withheld and the filing date, it seems a reasonable inference—given that the debtor had a balance in its operating account on the filing date of $30,903.48—that the operating account had a balance of at least $10,714.41 in the months leading up to the chapter 11 filing. In *Dameron*, Judge Tice applied the "lowest intermediate balance rule" to find that the remaining funds in the debtor's escrow account were trace-able to the mortgage loan proceeds that had been entrusted to the debtor as escrow agent.[11] If that rule is applied here, it would support a finding that $10,714.41 of the funds in the debtor's operating account on the filing date were held in trust for the benefit of the employees.

### D.

■ There is, however, one significant factual distinction between the present case on the one hand and *College Bound* and *Dameron* on the other, which is that by the time the hearing was held on the motion to compel payment, there were *no* funds left in the debtor's operating account. As noted above, the debtor's operating account balance had, prior to the bringing of the motion to compel payment, dipped to a low of $5,974.93 on October 31, 1997. Between the filing of the motion on May 5, 1998, and the hearing on June 2, 1998, the debtor's assets—consisting primarily of its intellectual property rights, customer list, and on-going software maintenance contracts—were sold, and all of the remaining cash in the operating account was used to make the final payroll to the debtor's employees. As discussed above, the cash proceeds in the amount of $200,000 are being held in escrow but are subject to various claims which, if all were allowed, would entirely consume the proceeds of sale.

10. The two statutory provisions cited by the employees in the motion to alter or amend—29 U.S.C. §§ 1104 and 1106—do not specifically address the creation of a statutory trust but rather simply set forth the standard of care required of a fiduciary under ERISA and prohibit certain acts by a fiduciary without defining who is a "fiduciary." In particular, the cited sections do not expressly make an employer, as such, a "fiduciary" of funds withheld but not paid over to the plan. *See Fentron Industries, Inc. v. National Shopmen Pension Fund*, 674 F.2d 1300, 1307 (9th Cir. 1982) (29 U.S.C. § 1104 does not impose per se rule of fiduciary liability for violating provisions of ERISA).

11. As explained in *Dameron*, where a trustee has commingled trust funds with his own funds, the lowest intermediate balance rule provides a pragmatic method for satisfying the requirement under Virginia law that in order to be entitled to the benefit of a constructive trust, "a claimant's money must be 'distinctly traced' into the chose in action, fund, or other property which is to be made the subject of the trust." *Dameron*, 206 B.R. at 403, *citing Crestar Bank v. Williams*, 250 Va. 198, 204, 462 S.E.2d 333, 335 (1995). The rule "[allows] the court to assume that funds subject to a constructive trust will be withdrawn last from a commingled account." *Dameron*, 206 B.R. at 403. Judge Tice also noted, "If trust funds have been removed, though, the rule does not permit them to be replenished by subsequent deposits." *Id.*

In order to impose a constructive trust, the claimant's money must, as discussed above, be "distinctly traced" into the fund or other property which is to be made the subject of the trust. *Dameron*, 206 B.R. at 403; *In re Riverside Electric Co.*, 211 B.R. 685 (Bankr.E.D.Mo.1997). In *Riverside*, the debtor/employer, Riverside Electric Company, had established an ERISA-qualified 401(k) plan under which it withheld portions of employee paychecks to be submitted to the plan. When it filed a chapter 11 petition on October 8, 1996, it had no funds in its payroll account.[12] After the case was converted to chapter 7, the trustee for the 401(k) plan moved for payment of withheld employee contributions and objected to the chapter 7 trustee's proposed payment to a secured creditor of accounts receivable that the chapter 7 trustee had collected post-petition,

The *Riverside* court held that the 401(k) trustee could not recover the withheld employee contributions from proceeds of the debtor's accounts receivable in which a secured creditor held a security interest. *Id.* at 689. The court declined to extend the holding in *College Bound*, stating,

> "The case before the Court differs significantly from *In re College Bound* and the *Grizzle* case upon which it relied in that, unlike the withholders of 401(k) contributions in those cases, *Riverside* did not have any funds in its bank account when it 'withheld' the employees' 401(k) contributions from their paycheck. Hence, the withheld funds cannot, and never could be, identified or traced."

*Id.* at 688. The *Riverside* court also agreed with the secured creditor's policy argument that extending *College Bound* to permit imposition of a constructive trust on a secured creditor's collateral "would disrupt the Code's priority and distribution systems" and would defeat the chapter 7 trustee's right under § 506(c) to surcharge

that collateral for the reasonable expenses of preserving and disposing of it. *Id.*

The *Riverside* court noted two Third Circuit cases which were instructive to its holding. In the first, *In re Penn Central Transportation Co.*, 486 F.2d 519 (3rd Cir. 1973), the court had held that a destination railroad holds in trust amounts collected on behalf of interline carriers for transportation and freight charges. *Id.* at 524. In a subsequent case, however, *In re Lehigh and New England Rwy. Co.*, 657 F.2d 570 (3rd Cir.1981), the same court held that unpaid interline claims against a railroad in receivership could not be paid out of the mortgaged assets ahead of bondholder claims secured by those assets. *Id.* at 579. The *Riverside* court particularly noted the Third Circuit's explanation that since the interline creditors in *Lehigh* could not trace their interests to mortgaged assets, they could not establish an equitable claim to the proceeds of those assets. *Riverside Electric*, 211 B.R. at 688.

### E.

Whether there is a security interest in the present case that could trump a constructive trust claim has yet to be determined, since the very existence and enforceability of the claimed security interest (in addition to the dollar amount of the creditor's claim) is disputed by the debtor in possession. Based on *Riverside*, however, it seems clear that a constructive trust—if allowable at all—can attach only to those proceeds from the sale of the debtor's assets that are unencumbered.

What *Riverside* does not address is the situation where a debtor, on the date the petition is filed, still has funds upon which a constructive trust may potentially be imposed, but those funds are subsequently spent. This was not an issue in *Dameron*, because the account had been frozen prior to the filing of the bankruptcy. *Dameron*, 206 B.R. at 397. The issue did arise,

---

12. It is unclear from the opinion whether there were any funds in the debtor's operating account on the filing date. The opinion does recite, however, that the account had a negative balance in the month leading up to the filing.

however, in *Citizens Federal Bank v. Cardian Mortgage Corp. (In re Cardian Mortgage Corp.)*, 122 B.R. 255 (Bankr.E.D.Va. 1990) (Tice, J.). In *Cardian,* the debtor's bank had erroneously credited $201,011.41 to the debtor's mortgage servicing account about three weeks prior to the filing of a chapter 11 petition. On the date the chapter 11 petition was filed, the account held $2.9 million. *Id.,* 122 B.R. at 255. The account subsequently "fell to a negative balance." *Id.,* 122 B.R. at 259. Judge Tice, agreeing with the bank, held that "the proper time period for tracing trust assets ends upon the filing of a petition in bankruptcy." *Id.,* 122 B.R. at 260. As explained by Judge Tice,

> Cardian maintains that to preserve constructive trust status after the res is dissipated postpetition would create a priority claim as to the debtor's other funds in order to provide complete relief. This would grant a superpriority not provided by the Bankruptcy Code over other creditors. The other side of this coin, however, is that the other creditors may have benefitted from the dissipation of the trust res by its providing the estate with funds to operate or with assets to pay out on allowed claims.

*Id.* The opinion in *Cardian* does not expressly state whether the mortgage servicing account, despite having fallen to a "negative balance" postpetition, had sufficient funds in it at the time the bank's turnover action was heard to repay the erroneous credit, or whether the payment would have to come out of other assets of the debtor not directly traceable to the mortgage servicing account. The passage quoted above, however, seems to suggest the latter.

▪ Notwithstanding *Cardian,* the court remains troubled that imposition of a constructive trust on assets of the debtor other than the traceable proceeds of the withheld salary is fundamentally inconsistent with the distribution scheme created by Congress in the Bankruptcy Code. In particular, there is little difference, conceptually, between simply underpaying an employee on the one hand, and paying the employee in full on paper but not paying over funds that the employee had authorized to be withheld on the other. The net effect on the employee is the same, except that in the former scenario the employee knows he or she has been short changed, and can act accordingly. In the Bankruptcy Code, Congress has provided a carefully crafted scheme of distribution which seeks to recognize the central principal of equality of distribution while providing for those priorities in payment which Congress has determined to be consistent with sound bankruptcy policy. With respect to unpaid employee wages, Congress has recognized a third-level priority for employee wages earned within the 90 days prior to the chapter 11 filing, up to a maximum of $4,000 per employee. § 507(a)(3), Bankruptcy Code.[13] To decree a constructive trust against the debtor's unencumbered assets as a mechanism for paying what, at bottom, amounts to unpaid employee wages earned more than a year prior to the bankruptcy, effectively gives the employees in the present case a higher priority than Congress has provided.

▪ Nevertheless, while *Grizzle* is not binding precedent in this circuit, it seems likely that the Fourth Circuit, if presented with the issue, would reach the same result. Once the analysis in *Grizzle* is accepted, the holding in *College Bound* naturally follows. I have some doubt about the correctness of the holding in *Cardian Mortgage* that the necessity for tracing always ends once the bankruptcy petition is filed—particularly where, as here, the motion to compel payment was not filed until more than a year later, and traceable assets that were available on the filing date have now been dissipated. However, in the absence of evidence that the moving employees are guilty of laches, and in the absence of contrary authority within this

---

13. This amount increased to $4,300.00 for cases filed after April 1, 1998.

district, I will follow *Cardian Mortgage,* subject only to the qualification, as articulated in *Riverside Electric,* that the constructive trust cannot attach to encumbered assets.

### III.

In summary, the motion to alter or amend will be granted, and the court will impose a constructive trust, in favor of the employees, on $10,714.41 of the unencumbered proceeds from the sale of the debtor's assets now being held in escrow. Since it cannot be determined at this time what portion, if any, of the proceeds are encumbered, no payment will be ordered until that issue is resolved.

A separate order will be entered consistent with this opinion.