In re Edward **WILLIAMS,** Brenda Diane **Williams,** Debtors.

No. 00–04681–8G3.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 28, 2001.

B. Gray Gibbs, Gibbs & McCurley, P.A., St. Petersburg, FL, Jamie K. Proctor, Tampa, FL, for debtors.

Donna A. Bucella, United States Attorney, Mac Cauley, United States Attorney, Hemant Sharma, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, D.C., for U.S.

Terry E. Smith, Bradenton, FL, Chapter 13 Trustee.

## ORDER ON OBJECTION TO CLAIM # 11 OF INTERNAL REVENUE SERVICE

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came on for final evidentiary hearing on the Objection to Claim # 11 of the Internal Revenue Service filed by Edward and Brenda Diane Williams (the "Debtors").

### Background

The Debtors filed a Chapter 13 petition on March 28, 2000. The Internal Revenue Service filed Claim # 11 on September 5, 2000 in the total amount of $13,160.26 for the year ending December 31, 1997. The Debtors filed an Objection to Claim # 11 on November 1, 2000.

Edward Williams received a check from Consolidated International Group, Inc. dated December 21, 1997 in the amount of $26,876.61. This amount represented a distribution from his 401(k) plan with his former employer less federal income tax withholding of 20%. Mr. Williams received the check in the mail "either ... the last week of December or the first week of January." Mr. Williams did not cash the check or deposit it in an existing bank account, but held the check until March 3, 1998, at which time he deposited the check in a newly opened SunTrust IRA account.

### Discussion

■ The Debtors' objection to the claim of the IRS focuses on the distribution from a 401(k) plan and the subsequent rollover

to an eligible plan. In general, distributions from qualified retirement plans are included in the income of the taxpayer/distributee in the year of distribution. Sections 72 and 402, Internal Revenue Code. An exception to the inclusion into income applies if the distribution is rolled over into an eligible retirement plan within 60 days of receipt of the distribution. 26 U.S.C. § 402(c)(3).[1]

The Debtors' Objection to Claim # 11 of the Internal Revenue Service contained the statement that "On or about December 21, 1997 the Debtor Husband received disbursement from a qualified retirement plan through his employer, Consolidated International Group, Inc., in the amount of $26,876.61." The check received by Mr. Williams was dated December 21, 1997.

The date of actual receipt of the property disbursed is critical in meeting the 60 day rollover exception from income. Although private letter rulings from the IRS

cannot be relied on as precedent, a reading of applicable rulings shows that the IRS has not looked to the date of the disbursement check for the start of the rollover period, but the date of actual receipt by the taxpayer. For example, in *Private Letter Ruling* 8833043, 1988 WL 572439, a taxpayer did not receive his distribution check from the trustee of his former profit-sharing plan for ten months after the date of issuance of the check. Since the taxpayer completed a rollover transaction within thirty days of actual receipt of the plan distribution, the IRS ruled that the taxpayer completed a valid rollover.

The Debtors do not argue that actual receipt of the check was within the 60 day period specified in § 402(c)(3).[2] The Debtors argue that by holding the check, and not depositing it initially in any type of account, they did not actually "receive" the property pursuant to this section until the check was deposited. As the Debtors'

---

1. 26 U.S.C. §§ 402(a) and (c) provide:

   **§ 402. Taxability of beneficiary of employees' trust**
   (a) Taxability of beneficiary of exempt trust.—Except as otherwise provided in this section, any amount actually distributed to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to the distributee, in the taxable year of the distributee in which distributed, under section 72 (relating to annuities).
   (c) Rules applicable to rollover from exempt trusts.—
   (1) Exclusion from income.—If—
   (A) any portion of the balance to the credit of an employee in a qualified trust is paid to the employee in an eligible rollover distribution,
   (B) the distributee transfers any portion of the property received in such distribution to an eligible retirement plan, and
   (C) in the case of a distribution of property other than money, the amount so transferred consists of the property distributed, then such distribution (to the extent so transferred) shall not be includible in gross

   income for the taxable year in which paid...
   (3) Transfer must be made with 60 days of receipt.—*Paragraph (1) shall not apply to any transfer of a distribution made after the 60th day following the day on which the distributee received the property distributed.* (Emphasis added.)

2. Rule 3001(f), Fed. R. Bankr.P., provides that a proof of claim shall constitute prima facie evidence of the validity and amount of the claim. The Debtors must present sufficient evidence to support their objection in order to shift the burden of proving the claim back to the IRS. *In re Rasbury*, 141 B.R. 752, 757 (N.D.Ala.1992), aff'd 24 F.3d 159 (11th Cir.1994); *In re Poiroux*, 167 B.R. 980, 982 (Bankr.S.D.Ala.1994). (Also see *Tolliver v. Commissioner*, 1991 WL 182864 (U.S.Tax Ct.), in which case the taxpayer did not produce evidence as to the date a check was received in connection with an attempted rollover of a pension distribution.) The Debtors did not, and acknowledge that they cannot, present evidence that their actual receipt of the check was within the 60 day rollover period required by § 402(c)(3).

Post–Final Evidentiary Hearing Reply Brief states, ". . . the 60–day period should not begin to run until the Debtors received and gained control over the distribution, i.e. final payment or certification of the check." The Debtors assert that until the check was honored by Consolidated International Group's bank in accordance with the bank collection process, the distributee has not received the property distributed.

The Debtors rely on Florida Statutes § 674.215 for the proposition that a check's payment does not become final until the payor bank makes "final settlement" on the check. Section 674.215 of the Florida Statutes relates to the rules for final payment of items between banks.[3] The Debtors also rely on *In re College Bound,* 172 B.R. 399 (Bankr.S.D.Fla.1994). In that case, the debtor corporation sent checks to the investment manager of the debtor's 401(k) plan, but then filed a Chapter 11 petition and closed the checking account before the checks could clear the account. The Court concluded in *College Bound* that the funds represented by the prepetition check that had been sent to the 401(k) plan but not paid by the bank had not become property of the plan, but were property of the bankruptcy estate. In determining the significance of the prepetition checks that had been dishonored, the

bankruptcy court looked to the bank collection process as codified under § 674.215 Fla. Stats. The court determined that since only a "provisional" settlement had been made to the payee's bank account pending "final settlement" when the funds are actually transferred from the payor's account, the funds evidenced by the prepetition checks never left the estate and were property of the estate. *Id.* at 402. Since the checks were dishonored, the bankruptcy court found under Florida law that the monies represented by such checks were deemed to have never left the debtor's checking account.

In the *College Bound* case, the checks were received, deposited, and then dishonored. The possibility of dishonor of a check, however, should not affect the determination of when a check is actually received by a payee. Florida Statutes § 673.3101 controls the relationship between payors and payees of negotiable instruments (as opposed to the relationship between banks, as relied upon in *In re College Bound, Inc.,* supra). This section provides that payment by an uncertified check is treated as a cash payment so long as the check is honored when initially presented.[4] The obligation is suspended upon delivery of the check and is discharged to the extent of the amount of the check upon

---

3. § 674.215. **Final payment of item by payor bank**. . .

(1) An item is finally paid by a payor bank when the bank has first done any of the following:
    (a) Paid the item in cash;
    (b) Settled for the item without having a right to revoke the settlement under statute, clearinghouse rule, or agreement; or
    (c) Made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearinghouse rule, or agreement.
(2) If provisional settlement for an item does not become final, the item is not finally paid.

4. § 673.3101. **Effect of instrument on obligation for which taken.—**
(2) Unless otherwise agreed and except as provided in subsection (1), if a note or an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken, and the following rules apply:
    (a) In the case of an uncertified check, suspension of the obligation continues until dishonor of the check or until it is paid or certified. Payment or certification of the check results in discharge of the obligation to the extent of the amount of the check.

honor. *In re A.W. & Associates, Inc.,* 196 B.R. 900, 904 (Bankr.N.D.Fla.1996). Thus, only in a situation where a check is subsequently dishonored is there a question of receipt by the payee and satisfaction of the obligation by the payor upon delivery of the check. It is certainly the prerogative of a payee to hold a check for a period of time, but in doing so, the payee does not defer the "receipt" of the satisfaction of the obligation and the consequences thereof.

Therefore, the Court determines that pursuant to 26 U.S.C. § 402(c)(3), "the day on which the distributee received the property distributed" in the Debtors' case was the date that the Debtors actually received the check from Consolidated International Group, Inc., and not the date that the check was paid by the payor bank. Accordingly, the objection to Claim # 11 of the IRS should be overruled.

This conclusion is consistent with the treatment of checks in other instances in the tax laws. A taxpayer may deduct expenses paid by a check delivered on or before December 31 against that year's income even though the drawee bank does not honor the check until the next calendar year. See, e.g., *Clark v. Commissioner,* 253 F.2d 745, 748 (3d Cir.1958); see also *Don E. Williams Co. v. Commissioner,* 429 U.S. 569, 572, n. 2, 582–583, 97 S.Ct. 850, 853, n. 2, 858, 51 L.Ed.2d 48 (1977). Treasury regulations similarly provide that a charitable contribution is made upon delivery of a check which subsequently clears in due course. Treas. Reg. § 1.170A–1(b), 26 CFR § 1.170A–1(b).

■ The Debtors made reference to a clerical error by Consolidated International Group, Inc. in issuing the check to Mr. Williams instead of making a direct rollover to an eligible plan in the Objection to Claim # 11 filed on November 1, 2000. The Court has reviewed several cases in which the tax court examined various mistakes and misunderstandings in connection with rollover transactions by taxpayers. In each case the taxpayer thought he had completed a valid rollover from a retirement plan or an IRA, but the IRS assessed taxes in connection with the transaction. In *Lemishow v. Commissioner,* 110 T.C. 110, 1998 WL 130156 (1998), a taxpayer received money distributions from IRA and Keogh accounts, purchased stock with the funds, and then deposited the stock into a newly opened IRA. The Tax Court held that since money was distributed from the IRA and Keogh account, the respective rollover provisions required that money be transferred into the newly opened IRA. *Id.* at 113. In *Schoof v. Commissioner,* 110 T.C. 1, 1998 WL 6143 (1998), twelve consolidated cases involved the transfer by taxpayers of retirement plan distributions into newly opened IRAs in which the trustee of the IRA was not eligible to serve in that capacity. Despite the court's sympathy to the taxpayers' plight, the court found that the lack of a qualified trustee was fatal to the existence of a qualified IRA trust, and the distributions were not completed rollovers. *Id.* at 11.

The failure to rollover IRA distributions for the same person from whose plan the distribution was made was fatal to the taxpayer in *Rodoni v. Commissioner,* 105 T.C. 29, 1995 WL 432635 (1995). In *Moon v. United States,* 1997 WL 718521 (Fed. Cl.), the taxpayer requested a distribution from his retirement plan directly to himself and then transferred the funds to an IRA. The retirement plan sent the taxpayer a check for the balance of his account less 20% which was withheld for federal taxes. The withheld taxes then became taxable income since the taxpayer only deposited the net check into his rollover IRA account, but did not contribute addi-

tional funds to the IRA to equal the total balance in his original retirement plan. In *Orgera v. Commissioner*, 1995 WL 710939 (U.S.Tax Ct.), the taxpayer established an IRA for rollover purposes from his pension plan, but deposited pension funds in a different account with the same financial institution and misunderstood the specifics of the funding of the IRA. Again, the tax court ruled for the Internal Revenue Service.

The tax court cases cited above have determined tax consequences for the taxpayer for failing to accomplish a valid rollover of an IRA or pension plan. The Court has reviewed one case in which a taxpayer attempted a rollover of stock and cash from a profit-sharing plan to an IRA and the trustee made a bookkeeping error which caused the stock portion of the distribution not to be placed in the IRA until after the 60 day rollover period had passed. The tax court disregarded the trustee's bookkeeping error and found that the taxpayer made a timely rollover to his IRA. *Wood v. Commissioner*, 93 T.C. 114, 1989 WL 83936 (1989). The other tax court cases cited above distinguish the *Wood* case as one resulting from a "book-keeping error" on the part of the trustee and do not extend the circumstances under which an unfortunate taxpayer who failed to complete a valid rollover could prevail against the Internal Revenue Service.

## Conclusion

The Court is sympathetic to the Debtors' circumstances. However, the Court has found no authority for the Debtors' position or for extension or modification of the requirement that a distribution must be rolled over within 60 days after actual receipt to be tax-free. In accordance with the legal authority set forth above, the Court determines that it is appropriate to overrule Debtors' Objection to Claim # 11 of the Internal Revenue Service.

Accordingly;

**IT IS ORDERED** that the Debtors' Objection to Claim # 11 of the Internal Revenue Service is overruled.